ANN McGEE, as Administratrix of the Estate of MICHAEL G. McGEE, Deceased, et al., Appellants-Respondents, and GLORIA SCHMID, as Administratrix of the Estate of WILLIAM C. SCHMID, Deceased, Respondent, v. ADAMS PAPER AND TWINE Co., INC., et al., Appellants, and CITY OF NEW YORK et al., Respondents.

First Department, July 7, 1966.

*Robert E. Curran* of counsel (*Kevin Moloney* with him on the brief; *Edward Sweeney,* attorney), for appellants.

*Arthur C. Parker* of counsel (*Levine & Broder; Bernstein, Weiss, Tomson, Hammer & Parter; Gregory Peck,* attorneys), for appellants-respondents.

*Lawrence J. Mahoney* of counsel (*Robert J. Giuffra* with him on the brief; *Dougherty, Ryan, Mahoney & Pellegrino,* attorneys), for Alice Brusati, respondent.

*Morris Pottish* of counsel (*James J. Egan, Jr.,* and *Irving A. Silverman* with him on the brief; *James J. Egan,* attorney), for Gloria Schmid, respondent.

*William A. Marks* of counsel (*Seymour B. Quel* with him on the brief; *J. Lee Rankin, Corporation Counsel,* attorney), for City of New York and others, respondents.

EAGER, J. These actions were brought to recover for alleged wrongful deaths of two firemen and four fire underwriter patrolmen resulting from the collapse of a building during a fire. The plaintiffs have recovered substantial judgments against the building owner and the lessee, but complaints of certain of the plaintiffs against the City of New York, the Fire Commissioner of the City, and the Commissioner of Buildings of the City were dismissed by the trial court at the close of the case. The defendants building owner and lessee appeal from the judgments entered in favor of plaintiffs, and plaintiffs appeal from the judgments of dismissal rendered in favor of the city and its Commissioners.

The building, located at 137 Wooster Street, was owned by the Adams Paper & Twine Co., Inc. (Adams) and was leased

to a partnership, the Elkins Co. (Elkins). Both the owner and the lessee were controlled by the individual defendants, members of the Elkins family, who were active in the business of processing and sale of paper goods.

The building was six stories in height, with the ground floor constituting the processing and shipping area; the second floor comprised largely office space; and the upper four floors were used principally for storage of various types of commercial paper.

The fire occurred on February 14, 1958. It apparently started on the fifth floor and was discovered at about 6:20 P.M. when an alarm was given. At the time of discovery, an employee, who was climbing the stairway to the fourth floor, gave warning to the defendants, Philip and Theodore Elkins and to the employees in the building. At about the same time, sheets of flame were observed shooting from the fifth floor windows. The firemen arrived within three minutes after the alarm. One of the first firemen to reach the scene testified that the " fire was at that time coming out of three or four or perhaps five windows ". Within 15 to 20 minutes after the firemen began their work of fighting the fire, the building collapsed, leaving only the front wall and a stairway standing. All of the plaintiffs' intestates were killed in the collapse of the building.

The deceased, Schmid and Blumenthal, were full-time employees of the City Fire Department. When the building collapsed, they were attempting to escape from the roof of the building where they had been engaged in an unsuccessful effort to open a scuttle for the purpose of ventilating the building.

The deceased, McGee, Devine, Tracy and Brusati, were fire underwriter patrolmen employed by the New York Board of Fire Underwriters. At the time of the building collapse, they were in the building and engaged in the spreading of tarpaulins on the third floor for the purpose of protecting the property of the building occupants from water and falling debris.

*Alleged common-law cases against building owner and lessee.*

The plaintiffs, in support of their alleged cases for recovery against Adams and Elkins, present the following several grounds for liability, to wit: (1) the alleged careless smoking by employees on the upper floors of the premises, including alleged violation of Administrative Code of the City of New York provisions, it being contended that the fire was caused by employee smoking (it was so found by the Fire Department); (2) the installation and maintenance on the fifth floor of a " home-made recreation room " constructed with scraps of wood

and cardboard, in which room employees engaged in smoking and which room was heated by an inadequately protected electric heater with open grill, it being contended that the said room was installed and maintained in violation of Building and Fire Department rules and regulations (but it is uncertain that the fire originated in such room); (3) the alleged overloading of the fifth floor, it being contended that paper in excess of the maximum weight load limit fixed by the Building Department was stored on such floor; (4) the failure of the defendants to give any warning of the alleged unusual hazard arising because of the paper storage on the fifth floor and its absorbent qualities, it appearing that the pouring of water into this floor during the fighting of the fire may have increased sixfold the weight on the floor; (5) the alleged failure of these defendants to use reasonable diligence to extinguish the fire following discovery thereof; and (6) as to the firemen Schmid and Blumenthal, the failure to maintain the roof scuttle in an openable condition, as a result of which it is contended that these firemen were unduly detained on the roof in their efforts to ventilate the building.

It is generally agreed that the negligence of an owner, lessee or occupant of a building, in relation to the cause of a fire, shall not be accepted as a basis for liability for injury or death to a paid fireman, or to a paid underwriter fire patrolman, occurring during his performance of his duties in the fighting of the fire or the protecting of property during the fire. Firemen and fire patrolmen are bound to anticipate that many fires do start from carelessness on the part of someone; and, absent special statutory provision, liability may not be predicated on a theory that the building owner, lessee or occupant owes a duty to paid firemen or to underwriter fire patrolmen to exercise care to eliminate a need for the special services for which they are trained and paid. Once a fire starts and the firemen or fire patrolmen arrive on the scene, they assume the usual risks inherent in their work, including those arising from contact with flames or smoke, or from the collapse in the ordinary course of the fire of ceilings, walls and floors of buildings. Where liability is found, it must generally rest upon causes other than those having to do with the inception of the fire and the ordinary hazards pertinent to the fighting and the spreading of the fire and the protecting of property therefrom. (See Ann. 13 A. L. R. 637, 141 A. L. R. 584 and 86 ALR 2d 1205, and cases cited; see, also, *Raymond* v. *Republic Light, Heat & Power Co.*, 262 N. Y. 498; *Lofgren* v. *Protane Corp.*, 284 N. Y. 709; *Farley* v. *Mayor, etc. of City of N. Y.*, 152 N. Y. 222, 227; *Beedenbender* v. *Midtown Props.*,

4 A D 2d 276; *Sicolo* v. *Prudential Sav. Bank,* 2 Misc 2d 289, 291, revd. 4 A D 2d 790, revd. on other grounds 5 N Y 2d 254; *Krauth* v. *Geller,* 31 N. J. 270.)

Accordingly, here, the negligence, if any, of Adams and Elkins, with relation to alleged employee smoking and in connection with the installation and maintenance of the recreation room, is not available to support the verdicts for plaintiffs.

Likewise, there is no basis for a case in the alleged failure of the defendants themselves and their employees to use reasonable care in an attempt to quell or contain the fire after discovery thereof. Their alleged want of diligence in this connection, if any, occurring prior to or at about the time of the arrival of the firemen, including their failure to use available fire extinguishers, stands on no different footing than alleged carelessness in the cause of the fire. Furthermore, there is no reasonable basis in the record for a finding that the efforts of the defendants would have helped in any way to bring under control the particular fire which, by the time of discovery, was raging fiercely on the fifth floor. Of course, when the firemen arrived on the scene, they took control of the matter of the fighting of the fire and the defendants were then under no duty to engage in independent efforts to extinguish or slow down the fire.

Where, however, a serious fire rages, irrespective of the cause, the owner, lessee or occupant must anticipate that firemen and/or fire underwriter patrolmen, in the performance of their respective duties, will be called and may enter upon and engage in fire fighting and property protecting activities on the premises. It is on this basis that the owner, lessee or occupant owes a measure of duty to the firemen or fire patrolmen. Firemen (and we would add, fire underwriter patrolmen), as well as policemen engaged in the performance of their duties, "must be treated neither as invitees nor as licensees, but as a special class, *sui generis,* privileged to enter the land for a public purpose irrespective of consent." The duties owing by the owner, lessee or occupant "are twofold. First, the owner [and lessee or occupant in control] is obliged to use reasonable care to keep in safe condition those parts of the premises which are utilized as the ordinary means of access for all persons entering thereon (*Meiers* v. *Koch Brewery, supra* [229 N. Y. 10]). Second, if the owner [lessee or occupant] knows of the presence on the premises of officially privileged persons, such as firemen or policemen, is cognizant of a dangerous condition thereon, and has reason to believe that they are unaware of the danger, he has a duty to warn them of the condition and of the risk involved (*Jenkins* v. *313–321 W. 37th St. Corp.,* 284 N. Y. 397; *Schwab*

v. *Rubel Corp.*, 286 N. Y. 525)." (*Beedenbender* v. *Midtown Props.*, 4 A D 2d 276, 281 [Botein, J.]. See, also, Ann. 13 A. L. R. 637, 141 A. L. R. 584 and 86 ALR 2d 1205, and cases cited [*supra*].)

It is in light of the foregoing that we must consider the remaining charges of negligence grounded in acts or omissions unrelated to the cause of the fire. Included is the alleged over-loading of the fifth floor with storage therein beyond permissible load limits of paper products and the alleged failure of defendants to exercise reasonable care to warn of the potential danger which would result from the absorption by the paper products of the water hosed into the floor by the firemen.

It should be noted, at first, that any case grounded on negligence in the alleged overloading of the fifth floor seems to have been abandoned by the plaintiffs upon the trial in that this alleged basis for recovery was not specifically submitted to the jury. But we will consider the matter in connection with a determination of whether the plaintiffs should be allowed a new trial rather than suffer a dismissal.

There was evidence that the fifth floor had a maximum weight load limit, fixed by the Building Department, of 85 pounds per square foot. The plaintiffs also claim to have established that the over-all dry weight of the total paper products stored on this floor exceeded such maximum weight load limit, but the evidence in this regard is vague and somewhat speculative. Certainly, however, the excess weight of the paper products on this floor, if it existed, was slight and was not the cause of the collapse of the building. The testimony was that the paper products, including particularly the tissue papers, were highly absorbent, capable of holding water like a sponge, and that, when wetted down, their weight could increase as much as six-fold. The Fire Department officers, at the scene of the fire, were aware that the building was used as a paper factory and warehouse, and anticipated that, eventually, because of the fire and the amount of water being poured into the building, it would collapse. An expert, skilled as a fire and explosion investigator, testified that paper products, such as those stored in the building, " makes a fire-fighting hazard * * * brings up immediately the probability of collapse when water is added and is detected as being added by not running off the floor, and you have a potential danger comparable to an explosive danger "; that here " the water would stay in one place rather than spreading out, because of the nature of the contents."

The building collapsed following the pouring of water into the floor for a period of 15 to 20 minutes, and the inference is

inescapable that the collapse was caused by the deterioration in the building structure due to the fire and the increased weight bearing on the floor due to the absorption by the paper products of the water.

Accordingly, the unsafe or dangerous condition did not arise from the alleged storage upon the fifth floor of goods beyond its specified weight-bearing capacity. The building became unsafe for occupancy by reason of the fire and the fact that, in the extraordinary emergency, large quantities of water were poured into and upon the floor, thus putting it to an unusual strain.

Any duty here on defendants' part must rest upon an obligation to warn, but the risk of collapse of the building was not an unusual hazard as to which the defendants owed a duty of warning. Such risk was well known to those attending upon the work of saving property and extinguishing the fire, and the defendants were entitled to assume that the firemen and fire patrolmen were fully aware thereof; this was in the category of usual risks incident to the danger and destructive effect of the fire; the collapse was the direct result of the raging of the fire and the fire-fighting activities, for which the defendants cannot be held responsible.

Coming to the remaining theory of negligence, we conclude that the unopenable condition of the scuttle on the roof also affords no basis for recovery for the death of the firemen Schmid and Blumenthal, who were detained briefly on the roof in an effort to open the scuttle. These firemen, together with others attached to a ladder company, pursuant to directions of their captain, were upon the roof for the purpose of opening any and all scuttles or hatchways in order to ventilate the building and permit the escape of smoke, heat and dangerous gases. They found that the cover on the particular scuttle or hatchway was nailed down, sealed and tarred over. The plaintiffs allege that the firemen spent three or four minutes in their unsuccessful efforts to open the scuttle cover and that this is the reason why the two firemen were unable to complete their escape from the roof before the collapse of the building.

It was not established that the sealing over of the particular scuttle constituted a violation of any statutory provision or municipal regulation. A particular Administrative Code provision, referred to by plaintiffs (Administrative Code of City of New York, § C26–677.0), provides for the maintenance of a scuttle for the purpose of access to the roof from the inside of a building, but the provisions thereof for a scuttle are specified as applicable only in the event that " other means of access

to the roof '' are not provided; and, here, there did exist other means of exit from the building to the roof.

In any event, the purpose of the maintenance of a scuttle or hatchway in a roof of a building such as this is to furnish access to or from the roof; the scuttle or hatchway is not installed or maintained for purposes of ventilation in case of a fire. The defendant owner and lessee of this building would not be expected to foresee that firemen, engaged in fighting a fire, would unreasonably delay their escape from the roof of the building by reason of their efforts to open this particular scuttle; accordingly, the negligence, if any, of the defendants in relation to the sealed scuttle may not be considered as a proximate cause of the death of these two firemen.

*Alleged case under section 205-a of the General Municipal Law*

The administratrix of the deceased fireman, Schmid, pleaded and presented an alleged cause of action under and pursuant to the provisions of section 205-a of the General Municipal Law. No other plaintiff alleged a cause of action under such section; and the other plaintiffs are now foreclosed from claiming in this action a cause of action on the basis thereof. (See *Gannon* v. *Royal Props.*, 285 App. Div. 131.)

The jury, in addition to returning a verdict in favor of the Schmid representative on the common-law negligence cause of action, returned a $5,000 verdict in her favor on the statutory cause of action. The plaintiff contends that such verdict is adequately supported on the issue of liability and, further, that the amount thereof should be increased to the sum of $190,000, which was the amount established and found by the jury as the damages recoverable on the common-law negligence cause of action. Since we have concluded, however, that the plaintiff failed to establish a right of recovery under the statute, we do not reach the question of whether or not the damages recoverable on a statutory cause may parallel or should embrace all the damages recoverable on a common-law negligence cause of action.

Said section 205-a of the General Municipal Law provides for a cause of action for the injury to or death of a fireman caused '' directly or indirectly as a result of any neglect, omission, wilful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments ''. The statute is to be construed liberally, bearing in mind that it was the stated intention of the Legislature

to create a cause of action in cases of the prescribed violations where otherwise there would be no right of recovery for the injury or death of a fireman. (See *Healy* v. *Rennert,* 33 Misc 2d 897, affd. 20 A D 2d 682; *Burigo* v. *Di Leo,* 38 Misc 2d 851.) The Legislature, in creating such additional cause of action, in the interests of protecting firemen against the hazards of such violations, may be considered as having intended to impose liability in any case where there is any practical or reasonable connection between a violation and the injury or death of a fireman. (See *Daggett* v. *Keshner,* 284 App. Div. 733 [BREITEL, J.].) As the basis for a recovery under the statute, it is not necessary that the plaintiff show " the same degree of proximate causal connection which we are accustomed to require in the field of negligence." (*Daggett* v. *Keshner, supra,* p. 736.) Accordingly, it has been held that a fireman is entitled to recover for injuries sustained in fighting a fire which was started as a result of a violation of a fire preventive ordinance. (See *Carroll* v. *Pellicio Bros.,* 44 Misc 2d 832.)

The plaintiff, Schmid, as a basis for a recovery under section 205-a, argues here, that the " evidence showed violations of law as to smoking, as to illegal recreation room, and as to illegally secured scuttle." There is no evidence that employee smoking on the premises, if responsible for the fire, constituted a violation by these defendants of any statute or ordinance or of any governmental or departmental regulation; there was no satisfactory showing that the existence of the recreation room, its type of construction or appurtenances contributed in any practical way to cause the fire or to appreciably hasten the spread thereof; and we have pointed out that the unopenable condition of the scuttle was not shown to have been violative of any law or regulation.

Plaintiff contends that the alleged employee smoking violated section C19–9.0 of the Administrative Code of City of New York, which prohibits smoking " in any part of any premises in which an explosive or highly combustible or inflammable material is manufactured, stored or kept for use or sale ".

Although, generally, paper towels, wrapping paper and toilet or other tissue are combustible and inflammable material in the sense that they are capable of being set on and consumed by fire (see *Strauss* v. *Schlimm,* 144 N. Y. S. 2d 229, 231; *People* v. *Freedman,* 31 N. Y. S. 2d 82; cf. Administrative Code, § C19–149.0), there was no proper showing that the paper products, as such and as stored in the defendants' building, were " explosive or highly " combustible or inflammable within the

meaning of the aforesaid section C19–9.0. (Cf. *Buchanan* v. *Exchange Fire Ins. Co.*, 61 N. Y. 26, 29.)

The provisions of the section are to be read and construed together as a whole in determining their intended effect (McKinney's Cons. Laws of N. Y., Book 1, Statutes, §§ 97, 239) and it is presumed, in regard to the provisions thereof, that a result, reasonable and enforcible, was intended thereby. (See *Johanns* v. *Ficke*, 224 N. Y. 513, 519.) It would be unrealistic and unreasonable to apply the Administrative Code restrictions generally to all premises and parts of premises where paper and paper products are stored. A reasonable construction requires that this section be confined in its application to cases where the material itself, or by virtue of the surrounding conditions, is " explosive and highly combustible " and it is not to be applied in the case of material which is inflammable only in the sense that it is capable .of being enkindled and of burning. On the record here, it may not be applied to furnish a basis for a cause of action under section 205-a.

*The alleged case against the city and its Commissioners.*

The trial court properly dismissed the complaints against the City of New York, its Fire Commissioner, and its Commissioner of Buildings. (See *Infosino* v. *City of New York*, 25 A D 2d 841.)

" Just as it is necessary to sustain an action against an individual or private corporation to ascertain whether it is under a duty to a plaintiff, so, also, it is necessary to decide whether a city or other civil subdivision or municipal corporation is under a duty to a plaintiff irrespective of sovereign immunity ". (*Motyka* v. *City of Amsterdam*, 15 N Y 2d 134, 138.)

Under the circumstances here, the city and its Commissioners assumed no duty concerning the safety of the underwriter patrolmen. They voluntarily entered the premises during the fire on their own responsibility in performance of their duties independent of the fire-fighting operations in charge of the Fire Department employees of the city. Their work was not performed at or under the specific direction of the Fire Chief, and, although in his conduct of the fire-fighting activities, he may have had the power to order their removal from the building, his failure to exercise such power did not amount to a breach of any duty owing to them.

These Fire Patrolmen were bound to realize the hazards involved and had no right to assume that the Fire Department employees were under any obligation with respect to their safety other than to refrain from reckless acts or affirmative acts of carelessness directly having a tendency to cause them injury.

Furthermore, the city or its Commissioners may not be held responsible for the death of the fireman Blumenthal on the theory of alleged negligence in the giving of directions to him to enter upon the roof for the purpose of ventilating the building or in the failure to timely order him off the roof. (The representative of the deceased fireman, Schmid, did not sue the city or the defendant Commissioners.)

The firemen, as heretofore noted, encountered difficulties in opening a particular scuttle or hatchway in the roof, and, shortly before the collapse of the building, the Captain of Blumenthal's company had ordered all hands to leave the roof and to get back to the building on the north. Thereupon, the Captain and the three other firemen succeeded in climbing up to and through a window into this building to the north. The last two persons in the line coming off the roof were Blumenthal and Schmid. As these two were proceeding toward the adjoining building, there was a rumble, and, then, Blumenthal lunged and grabbed the boot on the foot of one of the firemen who was proceeding through the window. But Blumenthal could not hold on and he and Schmid both fell to their deaths.

The matter of ventilation of the roof by means of opening a scuttle or hatchway was a proper undertaking in the fighting of the fire. The Fire Chief and the Captain of Blumenthal's company were not bound, in the exercise of reasonable care, to anticipate the delay involved in the attempt to remove the fastened scuttle cover. In any event, the city and its officials may not be held liable for more errors of judgment on the part of the Fire Department officers in their conduct of the fire-fighting activities. These were circumstances of emergency and the Fire Chief and his Captains are not chargeable with negligence for failure to exercise perfect timing in matters of judgment. Under the circumstances, Blumenthal's death, as a matter of law, was an unavoidable accident resulting from the hazards of his occupation.

Finally, the court properly disallowed the proposed expert testimony tendered by plaintiffs that the proper method for fighting a fire under the circumstances here was by means of an exterior operation with all men working outside the building and that proper fire-fighting practice and procedure required that all men, including firemen and fire patrolmen, be removed from the building.

The distinction between a proper and improper use in a negligence action of expert testimony as to common practice or custom '' is often not easy to draw, and there is danger that

a trier will give too much weight to the evidence; and this would be particularly true of a jury, no matter how strongly they may be cautioned not to do so * * * When evidence of a common practice or custom is offered, the question whether it will be of sufficient assistance in determining the ultimate question of negligence to make it properly admissible, in view of the collateral issues which may be raised and the danger of its misuse, must rest in the discretion of the court.'' (*Eamiello* v. *Piscitelli,* 133 Conn. 360, 367–368, 369, citing 2 Wigmore, Evidence [3d ed.], § 461, and *Moynihan* v. *Holyoke,* 193 Mass. 26, 29.)

A fire department officer, in his direction of fire-fighting activities, may be expected to draw from a general knowledge, training and experience in fire-fighting techniques, including due consideration of the general practices and procedures followed in fighting similar fires. But the exercise of the judgment and discretion vested in the officer in the conduct of such activities depends upon a considerable divergence of factors, varying from fire to fire, and the urgencies of particular situations, requiring decisions to be made on a moment's consideration, frequently justify a variance from general practices and procedures. Consequently, depending upon the circumstances, it may be unfair and improper to permit inexperienced laymen on a jury to appraise the directions or alleged failure of directions of an officer at a fire in light of alleged general practice and custom.

The expert testimony concerning fire-fighting practice, as offered here by plaintiffs, would have been misleading; it could have tended to create a false standard as to the care to be exercised by the Fire Department officers in charge of the fire-fighting operations at this particular fire. It was properly excluded. (Cf. *Schumer* v. *Caplin,* 241 N. Y. 346, 352.)

### Determinations of the appeals here.

The judgment appealed from, insofar as it directs recoveries in favor of the several plaintiffs against the defendant, the Adams Paper & Twine Co., Inc., and the Elkins defendants, should be reversed and vacated, on the law and the facts, with costs and disbursements of the appeal to such defendants, and the respective complaints of the several plaintiffs against said defendants should be dismissed, on the law, with taxable costs and disbursements; and the judgment, insofar as it dismisses the complaints of plaintiffs against the defendants, City of New York, the Fire Commissioner of the City of New York, and the Commissioner of Buildings of the City of New York, and directs a recovery of costs by them against the plaintiffs, should be

affirmed, with costs and disbursements of the appeal to the said defendants.

Botein, P. J., Rabin and Stevens, JJ., concur.

Judgment appealed from, insofar as it directs recoveries in favor of the several plaintiffs against the defendant, the Adams Paper & Twine Co., Inc., and the Elkins defendants, unanimously reversed and vacated, on the law and the facts, with costs and disbursements of the appeal to such defendants, and the respective complaints of the several plaintiffs against said defendants dismissed, on the law, with taxable costs and disbursements; and the judgment, insofar as it dismisses the complaints of plaintiffs against the defendants, City of New York, the Fire Commissioner of the City of New York, and the Commissioner of Buildings of the City of New York, and directs a recovery of costs by them against the plaintiffs, affirmed, with costs and disbursements of the appeal to the said defendants. Settle order on notice.