JOHN GUADAGNO, Plaintiff, v BALTIMORE & OHIO RAILROAD COMPANY et al., Defendants.

L.C.P. CHEMICALS & PLASTICS, INC., et al., Third-Party Plaintiffs, v TOWN OF HAMBURG, Third-Party Defendant.

Supreme Court, Erie County, July 15, 1988

## APPEARANCES OF COUNSEL

*Moot & Sprague (Michael A. Brady* of counsel), for Baltimore & Ohio Railroad Company, defendant. *Cohen & Lombardo, P. C. (William E. Coplon* of counsel), for L.C.P. Chemicals & Plastics, Inc., defendant and third-party plaintiff. *Damon & Morey (Anthony J. Colucci, III,* of counsel), for third-party defendant. *Paul William Beltz, P. C. (William A. Quinlan* of counsel), for plaintiff.

## OPINION OF THE COURT

MARIO J. ROSSETTI, J.

Motion by defendant, Baltimore & Ohio Railroad Company, and joined in by defendants, L.C.P. Chemicals & Plastics, Inc.,

and third-party defendant, Town of Hamburg, for summary judgment.

On October 31, 1981, at 7:00 A.M., plaintiff, a Town of Hamburg police officer, while off duty, was contacted at home and advised that a train had derailed, prompting a declaration of a state of emergency in the town, and was ordered to report to the area of the derailment. Upon his arrival, plaintiff was told that there was a fire, creating the danger of an explosion, and was assigned to assist in the evacuation of area residents.

At approximately 3:20 P.M., the danger was reportedly neutralized, the state of emergency was lifted, and area residents were permitted to return to their homes. Plaintiff subsequently reported to work for his regular shift commencing at 4:00 P.M., and was ordered to act as a police liaison with the clean-up crew—the Ed Winters Emergency Response Group. Others involved in the stabilization task were representatives from defendant, L.C.P., the Town of Hamburg Fire Department, the Federal Bureau of Explosives, and the Federal Railroad Administration.

As the clean-up crews attempted to move and lift the derailed car by using heavy duty cables, the car fell to the ground, causing it to release a chemical vapor. Plaintiff, who was standing nearby, inhaled the vapors which he contends caused the injuries alleged in his complaint.

Defendants contend that the "fireman's rule" as recently articulated by the New York Court of Appeals in *Santangelo v State of New York* (71 NY2d 393) prohibits plaintiff from recovering damages for injuries sustained while on duty because, as a policeman, he is deemed to have assumed the risk of injury during the course of his employment and is barred from recovering against third parties.

*Santangelo (supra)* held that the "fireman's rule" barred police officers injured while attempting to subdue an escaped mental patient, in general, from recovering damages against the State for negligence in connection with the patient's escape. The court's rationale was that policemen, like firefighters, are the experts engaged, trained, and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence, and, like firefighters, they generally cannot recover damages for negligence in the very situations that create the occasion for their services. *(Santangelo v State of New York, supra,* 71 NY2d, at 397.) The court reasoned that the police officers are protected by their training

that enables them to minimize the dangers their occupation requires them to face, and compensation and special benefits to help insure that the public will bear the cost of injuries suffered by its protectors in the line of duty. *(Santangelo v State of New York, supra,* 71 NY2d, at 397-398.)

Unlike the police officers in *Santangelo (supra),* who are the experts trained and employed in the apprehension of escaped mental patients and other potentially dangerous persons, or firemen, who are the experts trained and employed to fight fires *(McGee v Adams Paper & Twine Co.,* 26 AD2d 186 [1st Dept 1966]), plaintiff herein was not trained and employed to stabilize the danger caused by a derailed chemical tank car.

The obvious difference between this case and *Santangelo (supra), McGee (supra)* and other cases cited by defendants *(Walters v Sloan,* 20 Cal 3d 199, 142 Cal Rptr 152, 571 P2d 609 [police responding to fight]; *Krauth v Geller,* 31 NJ 270, 157 A2d 129 [firemen fighting fire]) is that the plaintiff herein had no training, no knowledge, no input, and absolutely no control as to how the tank car should be stabilized. The emergency herein was in the control of other parties who were specifically trained and employed for that particular purpose, and were so acting when the train car fell to the ground.

Finally, it is not insignificant that the "fireman's rule" has generally been applied where the third-party's negligence incipiated the emergency need for the fireman's or policeman's services *(Krauth v Geller, supra; Lipson v Superior Ct.,* 31 Cal 3d 362, 182 Cal Rptr 629). Unlike *Wilson v Florida Processing Co.* (368 So 2d 609 [Dist Ct App, Fla 1979]) and *Fletcher v Illinois Cent. Gulf R. R. Co.* (679 SW2d 240 [Ct App, Ky 1984]), where the need for police officers in an evacuation was created by a gas leak, plaintiff herein was not injured during the evacuation which was necessitated by the initial derailment, but by a new, immediate, and unforeseen danger caused by the subsequent action or conduct of the parties who were employed to move and stabilize the derailed tank car.

For the foregoing reasons, the defendant's motion for summary judgment is accordingly denied.