ROBERT STARKEY, Appellant-Respondent, v TRANCAMP CON-
TRACTING CORPORATION, Respondent-Appellant, and CITY
OF NEW ROCHELLE, Respondent, et al., Defendant.

Second Department, December 11, 1989

## APPEARANCES OF COUNSEL

*Belkin Natale & Oxman (Paul P. Carlucci* of counsel), for appellant-respondent.

*Gralicer & Kaiser (Barry S. Kaiser* of counsel), for respondent-appellant.

*Kroll & Tract (Richard P. McArthur* and *Alvin P. Bluthman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

On this appeal and cross appeal, we must determine whether the plaintiff, a New Rochelle police officer who allegedly sustained personal injuries in the course of his duties, is barred as a matter of law from recovery based on the principles enunciated in *Santangelo v State of New York* (71 NY2d 393). We find that under the circumstances, the plaintiff's cause of action based on common-law negligence may be maintained against the defendants City of New Rochelle and Trancamp Contracting Corporation.[1]

On Sunday, September 1, 1985, at about 10:00 A.M., the plaintiff was patrolling in his marked police vehicle. He was advised by another motorist who had pulled up to the patrol car that children were playing on the construction equipment at the premises of the Stephenson School. The school building, which was owned by the defendant City of New Rochelle, was being demolished by the defendant Trancamp Contracting Corporation pursuant to a contract with the city. The plaintiff, who was aware of the demolition work, having seen the site previously, stated that there was no fence or barricades around the building or the demolition site, which was near a playground. Moreover, according to the plaintiff, on prior occasions during the course of the demolition, other police

---

1. It is undisputed that the plaintiff's complaint and all cross claims against the defendant New Rochelle School District have been discontinued.

officers had been summoned to the demolition site because there were children playing on the property.

In response to the citizen's complaint, the plaintiff proceeded to the site, where he observed three children on a "track loader" machine. As the patrol car approached, the children ran away. The plaintiff checked the machine, and then he walked toward the partly demolished school building because he heard "rocks crumbling inside". He called out to alert anyone who might have been in the area of his presence, and entered the building to see if any children had gone in there to hide. After finding no one inside, he exited the building. As he did so, he stepped over rubble. According to the plaintiff, he was looking where he was walking and there was good visibility. Nevertheless, he encountered an incline as he came out of the building, and lost his footing. He tried to grab a piece of pipe but he was unable to break his fall. After he fell, he looked back to see what had caused him to fall and he saw "[j]ust rubble * * * [b]its and pieces of brick". After an examination at a hospital emergency room, the plaintiff returned to police headquarters and signed a report of "Disorderly Youths", which was the reason for his presence on the property.

The Supreme Court, in pertinent part, granted those branches of the motion of the defendant City of New Rochelle which were for summary judgment dismissing the complaint insofar as it was asserted against it and the cross claim of the defendant Trancamp Contracting Corporation against it on the grounds (1) that as a matter of public policy, the plaintiff must be deemed to have assumed a "hazardous job risk" under the "firemen's rule" as applied to police officers in *Santangelo v State of New York (supra)*, and (2) the affirmative defense of workers' compensation. However, the court denied that branch of the cross motion of the defendant Trancamp Contracting Corporation which was for summary judgment dismissing the complaint insofar as it was asserted against it on the ground that the application of the rationale of *Santangelo v State of New York (supra)* to this defendant was not entirely clear.

In *Santangelo v State of New York (supra)*, two police officers were injured when they attempted to apprehend an escaped patient from Kings Park Psychiatric Center. Specifically, when the officers found the patient at his grandparents' home, he threatened them with a knife. In the officers' effort to subdue the patient, both officers were injured *(Santangelo v*

*State of New York, supra,* at 396). In the context of this factual scenario, the Court of Appeals held that a police officer, like a firefighter, who is injured in the line of duty, "generally cannot recover damages for negligence in the very situations that create the occasion for their services" *(Santangelo v State of New York, supra,* at 397). Specifically, the court noted that "the 'firemen's rule'" was applicable to police officers on the public policy ground that "[l]ike firefighters, police are the experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence" *(Santangelo v State of New York, supra,* at 396-397).

In the aftermath of *Santangelo v State of New York (supra),* the courts have considered the specific factual circumstances involved, with the determinative factor being the degree of separation between the negligent act directly causing the injury and the act which occasioned the police officer's services. Thus, the courts have precluded recovery for injuries sustained by police officers during the apprehension of an unlicensed minor who was operating an unregistered and uninsured dirt bike *(see, O'Connor v O'Grady,* 143 AD2d 738), the explosion of a bomb *(see, Pascarella v City of New York,* 146 AD2d 61), the disturbance at a bank by an "emotionally disturbed" employee *(see, Hobbs v Bowery Sav. Bank,* NYLJ, Dec. 29, 1988, at 26, col 5), an off-duty arrest *(see, Campbell v Lorenzo's Pizza Parlor,* 143 Misc 2d 1022), and the apprehension of an escaped prisoner *(see, Wynne v Tullman,* 151 AD2d 476). However, the courts have refused to apply the so-called "firemen's rule" to a police officer who was injured while on duty, when he tripped and fell on a raised portion of a sidewalk/walkway *(see, Burnside v City of New York,* 144 Misc 2d 183), to a police officer who was struck by a motor vehicle while operating a motorcycle which had been confiscated from an arrested youth *(see, Tanico v Carr,* NYLJ, July 13, 1989, at 20, col 5), or to a police officer who was exposed to methyl chloride when a derailed train fell over during an attempt to stabilize it as the officer was supervising the evacuation of the train and acting as a liaison with the clean-up crew *(see, Guadagno v Baltimore & Ohio R. R. Co.,* — AD2d — [4th Dept, Nov. 15, 1989]).

Thus, *Santangelo v State of New York (supra),* does not preclude recovery in all cases where a police officer is injured in the line of duty. Specifically, the decision does not change the law with respect to the obligations of landowners (and their contractors) to police officers who come onto their prop-

erty.[2] Upon a review of that law, we note that initially, under the common law: "policemen and firemen [were] treated neither as invitees nor as licensees, but as a special class, *sui generis,* privileged to enter the land for a public purpose irrespective of consent. Whether they [had] entered to rout a prowler or to fight a fire. on the same or on the adjacent premises, whether they [had] been summoned by the owner or enter[ed] of their own volition, the duties owed them [did] not vary. The duties [were] two-fold. First, the owner [was] obliged to use reasonable care to keep in safe condition those parts of the premises which [were] utilized as the ordinary means of access for all persons entering thereon *(Meiers* v. *Koch Brewery* [229 NY 10], *supra).* Second, if the owner [knew] of the presence on the premises of officially privileged persons, such as firemen or policemen, [was] cognizant of a dangerous condition thereon, and [had] reason to believe that they [were] unaware of the danger, he [had] a duty to warn them of the condition and of the risk involved *(Jenkins* v. *313-321 W. 37th St. Corp.,* 284 N. Y. 397; *Schwab* v. *Rubel Corp.,* 286 N. Y. 525). The owner [owed] no duty to those privileged to enter irrespective of consent to safeguard those parts of his property not ordinarily utilized for passage through the premises, or to discover potential dangers therein, for the entry thereon by such persons under unusual conditions at any hour of the day or night [was] not reasonably forseeable" *(Beedenbender v Midtown Props.,* 4 AD2d 276, 281-282; *see also, Meiers ꞏv Koch Brewery,* 229 NY 10, *supra; Skupeen v City of New York,* 29 AD2d 282).

However, in 1976, the Court of Appeals held: "[t]he liability of a landowner to one injured upon his property should be governed, not by the ancient and antiquated distinctions between trespassers, licensees, and invitees decisive under common law, but rather by the standard applicable to negligence cases generally, i.e., the 'standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability' *(Basso v Miller,* 40 NY2d 233, 241)" *(Scurti v City of New York,* 40 NY2d 433, 437). In light of this change in the standard of care, the prior analysis of the duty of care owed to a police officer is no longer applicable with respect to the landowner's liability for injuries occurring on

---

2. To the extent that *Zigo v 1172 Anderson Corp.* (NYLJ, July 10, 1989, at 32, col 6) and *Janeczko v Duhl* (NYLJ, Nov. 30, 1989, at 23, col 2) may be read to the contrary, we do not find them persuasive.

those parts of his property not ordinarily used for passage through the premises. Such liability should now rest upon the determination of the foreseeability of the plaintiff's presence in light of the frequency of the use of the area where the accident occurred, coupled with whether the defendant "knew of the defective condition long enough before the plaintiff's injury to have permitted him in the exercise of reasonable care to have it corrected, or to give adequate warning of it; and if [the] defendant did not know of the condition, whether in the exercise of reasonable care he should have known of it and corrected it or given adequate warning of it" (PJI 2:90.1 [1988 Supp]; cf., *Fiederlein v Hochberg Bros.*, 83 AD2d 472 [applying this standard of reasonable care to the presence of a cable splicer for the New York Telephone Company on the defendant's premises to undertake repairs to restore telephone service to a nearby area]).

In applying these rules to this case, we find that the affidavits and supporting exhibits do raise triable issues of fact concerning the alleged negligence of the defendants City of New Rochelle and Trancamp Contracting Corporation with respect to the creation and maintenance of a dangerous condition at the demolition site which allegedly caused the plaintiff's injuries. In addition, the record raises triable issues of fact as to whether the plaintiff was comparatively negligent or assumed the particular risk of injury at the demolition site, which remain viable defenses to the common-law negligence claims (cf., *Benjamin v Sodus Cold Stor. Co.*, 149 AD2d 937; *Sugarman v Bryks*, — Misc 2d —). Moreover, since the plaintiff's services, which were in response to a complaint of "Disorderly Youths" at the demolition site, were sufficiently separate and apart from the negligent acts which allegedly caused his injuries, we conclude that the holding in *Santangelo v State of New York (supra)* does not warrant dismissal of the cause of action based on common-law negligence as against either the owner City of New Rochelle or the demolition contractor Trancamp Contracting Corporation.

While the Supreme Court made reference to the affirmative defense of workers' compensation pleaded in the answers of the defendant City of New Rochelle and the defendant Trancamp Contracting Corporation, those defendants did not rely upon that defense in support of the motion and cross motion at the Supreme Court, and do not do so on appeal. Therefore, we decline to consider the issue.

Accordingly, the order is modified, on the law, by deleting

the provisions thereof which granted those branches of the motion of the defendant City of New Rochelle which were for summary judgment dismissing the complaint insofar as it is asserted against it and the cross claim of the defendant Trancamp Contracting Corporation against it and substituting therefor a provision denying those branches of the motion, and as so modified, the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs payable to the plaintiff by the defendants City of New Rochelle and Trancamp Contracting Corporation.

BROWN, J. P., LAWRENCE, KOOPER and SPATT, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof which granted those branches of the motion of the defendant City of New Rochelle which were for summary judgment dismissing the complaint insofar as it is asserted against it and the cross claim of the defendant Trancamp Contracting Corporation against it, and substituting therefor provisions denying those branches of the motion; and as so modified, the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs payable to the plaintiff by the defendants City of New Rochelle and Trancamp Contracting Corporation.