81 N.Y.2d 584 (1993)
619 N.E.2d 369
601 N.Y.S.2d 432
Gertrude J. Cooper, Appellant,
v.
City of New York et al., Respondents, et al., Defendant.
Court of Appeals of the State of New York.
Argued May 4, 1993.
Decided June 15, 1993.
Molod & Berkowitz, New York City, and Seligson Rothman & Rothman (Martin S. Rothman, Seymour Berkowitz and Alyne I. Diamond of counsel), for appellant.
O. Peter Sherwood, Corporation Counsel of New York City (Linda H. Young and Pamela Seider Dolgow of counsel), for City of New York, respondent.
Chief Judge KAYE and Judges SIMONS and BELLACOSA concur with Judge HANCOCK, JR.; Judge TITONE dissents and votes to reverse in a separate opinion; Judge SMITH taking no part.
*587 HANCOCK, JR., J.
Plaintiff, a police officer, was injured when the police vehicle in which she was riding as a "recorder" struck another vehicle in responding to an "officer in need of assistance emergency call". The decisive issue presented in plaintiff's appeal is whether the Appellate Division properly reversed the judgment against the City after a jury verdict and dismissed the complaint under Santangelo v State of New York (71 N.Y.2d 393) which holds that police officers like firefighters generally cannot recover for injuries resulting from the special risks inherent in the duties they are engaged to perform (id., at 397). For reasons which follow we hold that the dismissal was proper and, accordingly, affirm.

I
The following facts taken from the trial testimony are pertinent. On December 14, 1984, plaintiff, in performance of her duties as a police officer, was riding as a passenger "recorder" in a police car operated by Officer Bakal. At about 9:00 P.M. the police car received a "1013" call  a top-priority call, which must be responded to, indicating that a fellow officer is in trouble and needs assistance. When the call was received, it was dark and just beginning to rain. In responding to the "1013", plaintiff and Officer Bakal proceeded at approximately 40 miles per hour with the car's red light flashing and sirens sounding. The accident occurred when the police car crashed into the rear of defendant Hall's automobile which was stopped at an intersection for a red light. There was a conflict in the proof as to whether defendant Hall had changed lanes immediately prior to the impact.
At the conclusion of the evidence, the City moved to dismiss plaintiff's complaint under the Santangelo rule. The Court denied the City's motion and submitted the case to the jury which found that defendant Hall was free of fault and that *588 Officer Bakal's negligence was the sole cause of the collision. Plaintiff's complaint was subsequently dismissed as against defendants Bakal and Hall. The action against those defendants is not before this Court.
The trial court denied the City's motion to set aside the verdict and its renewed motion to dismiss under Santangelo. The court, however, granted the City's motion to reduce the verdict and entered a judgment for the reduced sum. The City appealed to the Appellate Division and plaintiff cross-appealed on the question of the reduction in damages. Citing Santangelo, the Appellate Division unanimously reversed and dismissed the complaint. Although the theory was not pleaded in the complaint or asserted before the trial court, the Appellate Division, in the exercise of its discretion, considered and rejected plaintiff's unpreserved contention that there was a basis for the City's liability under General Municipal Law § 205-e.
We granted leave to appeal to plaintiff to address her contention that the Santangelo rule does not apply because the action falls within the exception to that rule which assertedly applies when there is a sufficient degree of separation between the negligent act causing the injury and the event which occasioned the services being performed. In this Court, plaintiff argues additionally that the Appellate Division erred in rejecting her argument pertaining to General Municipal Law § 205-e. However, because the General Municipal Law § 205-e theory was not submitted to the jury for its consideration and was thus unpreserved, that theory is not available to plaintiff in this Court as a basis for reversal (see, Lichtman v Grossbard, 73 N.Y.2d 792, 794-795; Gordon v American Museum of Natural History, 67 N.Y.2d 836, 837, n). We turn to a discussion of plaintiff's arguments concerning Santangelo.

II
In Santangelo, this Court decided that the so-called "fireman's rule" (see, e.g., McGee v Adams Paper & Twine Co., 26 AD2d 186, 190, affd on opn below 20 N.Y.2d 921) should be applied to claims of police officers as well as those of firefighters for injuries resulting from the particular dangers associated with the performance of their duties (Santangelo, supra, at 397-398). We observed that the "fireman's rule" was grounded on the public policy that "firefighters trained and compensated to confront such dangers [i.e., risks of negligence-related *589 injuries in fighting fires] must be precluded from recovering damages for the very situations that create a need for their services" (id., at 397). We pointed out that in the more recent cases cited from other jurisdictions the rationale for the "fireman's rule" has been cast "in terms of assumption of risk: persons who choose to become firefighters assume the risks of fire-related injuries, including the risk of negligence of property owners and occupants in maintaining their premises (see, e.g., McGee v Adams Paper & Twine Co., 26 AD2d, at 190, supra; see also, Pottebaum v Hinds, 347 NW2d 642 [Iowa]; Calvert v Garvey Elevators, 236 Kan 570, 694 P2d 433; Armstrong v Mailand, 284 NW2d 343 [Minn]; Krauth v Geller, 31 NJ 270, 157 A2d 129" (id., at 397 [emphasis added]). We concluded that these same policy considerations are equally relevant to line-of-duty injuries sustained by police officers. Thus, plaintiff Santangelo was precluded from recovering for injuries incurred in apprehending an escaped mental patient because such function was within the scope of a police officer's duties and the risk of injury was inherent in the task. Here, as in Santangelo, plaintiff, in riding as a passenger "recorder" in a vehicle responding to a "1013" emergency call, was performing a function endowed with the special risks inherent in the duties of a police officer. It is undisputed that responding to an emergency call would require crossing intersections in excess of the speed limit and against the traffic signals, irrespective of weather and lighting conditions, with the attendant possibility of collision. Responding to such an emergency entails risks that are clearly inherent in the type of police duties contemplated by the Santangelo rationale.
Plaintiff argues, however, that the Santangelo rule should not apply because the negligence causing her injuries  i.e., the improper driving of Officer Bakal  was separate and distinct from the incident which necessitated the police car's emergency response to the "1013" call. Plaintiff cites Appellate Division decisions as authority for her asserted "separate and distinct" exception to the Santangelo rule (see, e.g., Janeczko v Duhl, 166 AD2d 257, 259-261; Sharkey v Mitchell's Newspaper Delivery, 165 AD2d 664; Starkey v Trancamp Contr. Corp., 152 AD2d 358, 361; but see, Pascarella v City of New York, 146 AD2d 61, 68-69, lv denied 74 N.Y.2d 610 [Santangelo applied to preclude recovery of policeman injured in explosion while investigating report of terrorist bomb]; Buckley v City of New York, 176 AD2d 207, 208, lv denied 79 N.Y.2d 757 [Santangelo a bar to claim of policemen injured in apprehending *590 criminal suspect based on City's failure to follow operating procedures]). The "separate and distinct" exception which plaintiff would have us adopt is that articulated in Starkey  i.e., that the application of Santangelo should depend on "the degree of separation between the negligent act directly causing the injury and the act which occasioned the police officer's services" (Starkey, supra, at 361 [emphasis added]). In Starkey, the Appellate Division declined to apply Santangelo because the injury sustained by a police officer from a defective condition at a construction site was separate and apart from the reason for his being at the site.
Our Court, however, has never adopted the proposed "separate and distinct" exception and, indeed, to do so would be inconsistent with the rationale of Santangelo. Rather, as noted in Pascarella (supra, at 68-69) and Buckley (supra, at 208) the determinative factor is whether the injury sustained is related to the particular dangers which police officers are expected to assume as part of their duties. Thus, in Pascarella, where plaintiff's claim against the City was based, in part, on the negligence of other police officers in failing to follow instructions for bomb disposal, the Appellate Division dismissed the claim, quoting our statement in Santangelo that police officers "receive both training that enables them to minimize the dangers their occupation requires them to face, and compensation and special benefits to help assure that the public will bear the costs of injuries suffered by its protectors in the line of duty" (Santangelo, supra, at 397-398).
The Pascarella Court added that "individuals who elect to join the uniformed services do so with knowledge of the dangers attendant upon those occupations and the distinct possibility that they might be hurt in the course of their employment. It is precisely because being a police officer is so hazardous that the Legislature has provided for added benefits to those injured in the line of duty" (Pascarella, supra, at 69-70; see, Buckley v City of New York, supra, at 208 [citing Santangelo for the proposition that police officers may not generally recover damages for negligence relating to hazards and emergencies for which they are trained and compensated]). Here, there is no question that plaintiff's injuries were related to a particular risk that she had assumed as part of her duties. Part of that risk was the possibility of injury while rushing to the scene of an emergency. That no connection can be shown between Officer Bakal's negligence and the unknown incident that gave rise to the emergency call is of no moment. *591 What matters is the connection between plaintiff's injury and the special hazard that plaintiff assumed as part of her police duties.
Plaintiff contends, however, that even though her claim is related to special hazards inherent in the police function, Santangelo should not apply because her claim against the City is based on the negligence of a fellow servant. In effect, she argues that all fellow-servant claims of negligence against the City are actionable because we have abrogated the general common-law fellow-servant doctrine, which traditionally prohibited recovery by an employee against an employer based on the negligence of another employee (see, Buckley v City of New York, 56 N.Y.2d 300, 305 [concluding that the "fellow-servant rule is no longer to be followed in New York"]; see also, Poniatowski v City of New York, 14 N.Y.2d 76, 81). Nothing in our Santangelo decision supports that argument. To carve out an exception for claims otherwise falling within Santangelo but resulting from the negligence of fellow servants would amount to a contradiction of the rule's rationale. The policy reasons  i.e., that police officers and firefighters are trained and compensated to encounter the special hazards inherent in their work and assumed as part of their employment  apply equally whether these hazards relate to negligence of third parties or fellow servants (Santangelo, supra, at 396-397). Moreover, to engraft such an exception onto Santangelo would create an obvious anomaly. Police officers injured by the negligence of a third party in a work-related accident resulting from a risk inherent in their work would be barred under Santangelo but those injured in similar circumstances by the negligence of fellow servants would be permitted to recover. We thus reject the broad "fellow-servant exception" to Santangelo urged by plaintiff and apparently the dissent.
We emphasize, however, that the Santangelo rule does not preclude all causes of action against a municipality for injuries resulting from a fellow police officer's negligence; nor is Santangelo at odds with our previous holdings in which we abrogated the general prohibition of the fellow-servant rule (see, Buckley, 56 N.Y.2d 300, supra; and Poniatowski, supra). As noted, the Santangelo rule bars only those claims for injuries caused by the negligence of a fellow police officer when the injury is related to the dangers that are associated with police functions  as, for example, for an injury resulting from a bomb explosion (see, Pascarella, supra), an injury caused from the improper apprehension of a suspect (see, Buckley, 176 AD2d 207, supra) *592 or, as here, for injuries sustained in responding to an emergency "1013" call. Obviously, injuries could be sustained by police officers as a result of negligence of their fellow officers during the performance of their work which are wholly unrelated to the assumed risks of police duty. It follows that Santangelo and the precedent of this case would not be a bar to the wide range of claims based on negligence of fellow servants where the risk factors on which the Santangelo decision is predicated are not present (see, Kenavan v City of New York, 70 N.Y.2d 558, 569; Buckley, 56 N.Y.2d 300, supra).
Finally, our decision today is consistent with our holding in Kenavan in which the claims against the municipality were dismissed for a different and unrelated reason, i.e., on the basis of the general governmental immunity rule protecting a municipality from liability for "judgmental errors in the exercise of its governmental functions (see, e.g., Weiss v Fote, 7 N.Y.2d 579, 584-587)" (Kenavan, supra, at 569; see, McCormack v City of New York, 80 N.Y.2d 808, 811 [dismissing the claim on the same ground and citing, inter alia, Haddock v City of New York, 75 N.Y.2d 478, 484]).
The concerns expressed in the dissent, we believe, are sufficiently answered by the points already made: (1) that the Santangelo rule is a narrow one covering only claims arising out of the special hazards inherent in police functions; (2) that our holding here neither overrules nor limits our previous decisions abrogating the traditional common-law fellow-servant rule; and (3) that our holding does not affect a broad area of claims based on negligence of fellow servants outside of those which fall within the Santangelo rule.
The order of the Appellate Division should be affirmed, with costs.
TITONE, J. (dissenting).
The majority concludes that the "firefighter rule" bars plaintiff from suing the municipality for injuries sustained in a line-of-duty car accident caused by a co-worker. The Court then addresses the viability of the claimed "separate and distinct" exception to that rule. In my view, however, the pivotal inquiry should be whether the "firefighter rule" has any application at all to this co-worker negligence suit. Notably, the "firefighter rule" has not previously been applied in New York to bar recovery for line-of-duty injuries occasioned by the plaintiff's fellow servant. Rather, this type of claim has been permitted and is directly governed by an independent line of cases, the vitality of which *593 has recently been confirmed in our decisions in Kenavan v City of New York (70 N.Y.2d 558) and McCormack v City of New York (80 N.Y.2d 808). Moreover, no compelling policy justification exists for penalizing police officers and firefighters  solely because of the occupation they have chosen  for the carelessness of their fellow servants by barring their recovery under an extension of the "firefighter rule". Indeed, application of the "firefighter rule" to co-worker negligence cases will lead to exactly the type of unjustifiable hardship that this Court attempted to avoid when it abolished the "fellow-servant" rule in Buckley v City of New York (56 N.Y.2d 300). Accordingly, I respectfully dissent.
The majority has affirmed the Appellate Division's application of the "firefighter rule" as a common-law bar to plaintiff's suit. However, the "firefighter rule", which precludes firefighters and, after Santangelo v State of New York (71 N.Y.2d 393), police officers from recovering for line-of-duty injuries caused by "negligence in the very situations that create the occasion for their services" (id., at 397), has never been applied to bar a suit where the tortfeasor was a co-worker of the injured plaintiff. Indeed, every case in which the rule has previously been applied has involved negligent acts committed by a third party, such as an escaping criminal or the owner of land to which the officer or firefighter is summoned in an emergency (see, Santangelo, supra [suit against hospital staff for negligent supervision of mental patient who injured police officer during attempted escape]; Sciarrotta v Valenzuela, 182 AD2d 443 [suit against negligent driver who struck police officer directing traffic]; Maisch v City of New York, 181 AD2d 467 [suit by police officer against owner of premises for negligent maintenance of steps]; Furch v General Elec. Co., 142 AD2d 8 [claim by firefighter against contractors whose negligent construction of office building caused toxins to be released throughout burning building]).
The majority suggests that the "firefighter rule" was applied in Pascarella v City of New York (146 AD2d 61, lv denied 74 N.Y.2d 610) to bar a claim against the City based "on the negligence of other police officers in failing to follow instructions for bomb disposal" (see, majority opn, at 590). However, the Court's dismissal of plaintiff Pascarella's claim was not predicated on the "firefighter rule". The plaintiff police officer, injured when a terrorist bomb exploded outside the police headquarters, sued the municipality on the ground that the agency's creation of a written internal procedure for handling *594 a bomb threat created a special duty owed by the municipality to the plaintiff which provided an exception to the municipality's general immunity from negligence claims. The Appellate Division held that the police agency did not create a special relationship with its employees which would render it liable to them for negligence whenever it adopts internal policies which it fails to adhere to. The Court also held that even had the supervising officer exercised poor judgment in failing to deploy a bomb squad under existing departmental guidelines, such policy determinations were insulated from liability under Kenavan v City of New York (supra), which held that discretionary decisions made by fellow officers in the exercise of their professional judgment are not actionable in tort. Pascarella thus concerned only the application of two separate aspects of the governmental immunity doctrine; the "special duty" rule and the "immunity for discretionary decisions" rule (see, e.g., Tango v Tulevech, 61 N.Y.2d 34).[*] Regardless of how this lower court case is characterized, this Court has not previously applied the "firefighter rule" to negligence suits based on the conduct of a fellow servant.
That the "firefighter rule" has not previously been applied to bar actions predicated on co-worker negligence is no accident. In fact, an independent line of cases has developed to govern the exact circumstance where the negligence complained of is attributable to a "fellow servant". However, for reasons which are not apparent, the majority disregards this line of cases, which removed any common-law impediment to such recovery. The existence of this peculiarly applicable precedent renders the majority's extension of the "firefighter rule" an unwarranted intrusion on settled principles without compelling justification.
The onerous "fellow-servant" rule, which developed at common law to preclude respondeat superior claims against an employer by an employee injured in the workplace due to the negligence of a co-worker, was abolished by this Court in Buckley v City of New York (56 N.Y.2d 300, supra) on the ground that it worked "an unjustifiable hardship upon individuals injured in the workplace" (id., at 305). Focusing on the role of the employer, we reasoned that it was illogical to *595 permit a third party, but not an employee, to recover from the employer for the negligence of a co-worker where "in both instances the employer might have avoided the injury by selection of more careful employees" (id., at 303). Indeed, the Buckley Court acknowledged that "the class of persons most frequently endangered by the negligence of an employee  his fellow workers  should not, without compelling reason, be denied a remedy accorded to the general public" (id., at 303).
Significantly, both Buckley and its companion case (Lawrence v City of New York, 56 N.Y.2d 300) involved line-of-duty injuries sustained by members of the City's uniformed services. Yet, the Court did not feel called upon to apply the "firefighter rule" as a bar to recovery, even though that rule had been in existence for at least 14 years (see, McGee v Adams Paper & Twine Co., 20 N.Y.2d 921, affg 26 AD2d 186). It could be argued that the absence of a reference to the "firefighter rule" in Buckley is unsurprising in that the pre-Santangelo case involved an injured police officer, and the "firefighter rule" was not legally applicable to police officer claims until Santangelo extended it. However, the same cannot be said about the companion case, Lawrence v City of New York, in which the injured plaintiff was a firefighter. Presumably, if the "firefighter rule" was never limited to claims against third-party tortfeasors such as landowners, it would have been applied in Lawrence to bar the firefighter's attempt to recover for line-of-duty injuries. The fact that the rule was not applied  or even mentioned  suggests that it was at that time assumed to have no application in the context of a suit brought to remedy the negligence of a co-worker.
That nothing since Buckley has altered the law in this area is confirmed by this Court's recent formulation of the law governing firefighters' and police officers' negligence suits against municipal employers. In Kenavan v City of New York (70 N.Y.2d 558, supra), a case involving a firefighter's line-of-duty injuries, we specifically relied on Buckley to support our ruling that "[a]lthough a municipality may be held liable for injuries suffered by a firefighter caused by the negligence of a fellow firefighter (see, e.g., Buckley v City of New York, 56 N.Y.2d 300, 305 * * *), liability will not be imposed where the firefighter's conduct involves the exercise of professional judgment" (id., at 569 [emphasis supplied; some citations omitted]). Plainly, the italicized language would not have been a true statement of the law if, as the majority asserts, the "firefighter rule" has always barred recovery for line-of-duty injuries *596 caused by co-workers' negligence. Moreover, if the majority's assertion were correct, the qualifying rule articulated in Kenavan  i.e., that "liability will not be imposed where the [co-worker's] conduct involves the exercise of professional judgment"  would have been completely superfluous. In fact, the Pascarella case, so heavily relied upon by the majority to support its proposition that the "firefighter rule" also governs line-of-duty injuries caused by a co-worker, similarly recognized that a municipality could be responsible under the doctrine of respondeat superior "for acts committed by its employees in the scope of their employment" (146 AD2d, at 68).
Without explanation, the majority concludes that its decision today is entirely consistent with the holdings in Kenavan and McCormack because in those cases "the claims against the municipality were dismissed for a different and unrelated reason"  on the basis of governmental immunity from judgmental errors (majority opn, at 592). However, this leap in logic is belied by the express language in Kenavan, which states that unless the injury-producing conduct involved an act of professional judgment, a municipality may otherwise be held liable for "injuries suffered by a firefighter caused by the negligence of a fellow firefighter" (70 NY2d, at 569). Indeed, if the "firefighter rule" bars recovery for all line-of-duty injuries regardless of the source of the negligence, as the majority holds, application of the governmental immunity doctrine to bar a suit where the colleague's official action involves the exercise of expert judgment in policy matters would be unnecessary.
Similarly, implicit in our later holding in McCormack v City of New York (80 N.Y.2d 808, supra), that a plaintiff police officer could not recover for injuries occasioned by a commanding officer's discretionary act, is the converse conclusion that negligent acts of co-workers not involving the exercise of professional judgment constitute actionable conduct. Once again, had we considered the "firefighter rule" a general bar to recovery for line-of-duty injuries, we would have had no need in McCormack to discuss whether the allegedly negligent police officer's conduct was immune from liability because it was classifiable as the exercise of professional judgment.
In view of the holdings and analysis in Buckley, Kenavan and McCormack, the majority's application of the "firefighter rule" in this context can only be regarded as a dramatic *597 extension of that rule and a significant departure from past precedent. While altering the common-law's status quo is certainly a prerogative of this, the State's highest Court, I cannot agree that there are sound reasons for doing so here.
Attempting to limit the far-reaching effect of its holding, the majority states that the "firefighter rule" "does not preclude all causes of action against a municipality for injuries resulting from a fellow police officers' negligence", but only those in which the injuries are "related to the dangers that are associated with police functions" (majority opn, at 591). However, the majority fails to explain what "obvious" category of cases would involve injuries during work performance which are "wholly unrelated to the assumed risks of police duty" (majority opn, at 592). By definition, all cases of "fellow-servant" negligence will inherently involve injury "associated with police functions" because the municipality can only be held liable on respondeat superior theories for an employee's negligent conduct that occurs during the scope of employment, i.e., during crimefighting or firefighting. Thus, despite the majority's protestation, it is hard to imagine any instance where the majority's holding would not bar recovery for a fellow-servant's negligence.
The underlying rationale for the firefighter rule is that public funds should not be used to pay damages for line-of-duty injuries sustained by firefighters and police officers who are "experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence" (Santangelo, supra, at 397). The majority concludes that the "firefighter rule" bars claims based on the negligence of third parties and fellow servants alike because "`persons who choose to become firefighters assume the risks of fire-related injuries, including the risk of negligence of property owners and occupants in maintaining their premises'" (majority opn, at 589, quoting Santangelo, supra, at 397 [emphasis added]). However, while the italicized language may support the conclusion that police officers and firefighters assume the risks inherent in fighting crime and fires, it does not follow from those terms that police officers and firefighters analogously assume the additional and entirely separate risks associated with the carelessness of their co-workers. Those risks are certainly not part of the hazards that police and firefighters expect to encounter in the ordinary course of their employment.
*598 As between a negligent member of the general public and a trained police officer or firefighter, losses due to negligence at the scene of the emergency should be assumed by the trained expert. However, no similar policy consideration justifies application of that rule where the plaintiff and the tortfeasor are presumably equally trained, and where the plaintiff, a passenger in a negligently driven police car, had no more opportunity than a member of the general public would have had to employ any special skills to avoid injury. Where the tortfeasor is a co-worker employed by a municipality, the burden should be placed on the municipal employer engaged in the selection and training of its personnel because that entity is in the best position to avoid the injury. The loss should not be borne by the injured police officer who exercises no control over his or her negligent co-worker. Notably, the majority's extension of the "firefighter rule" to these facts to all but eliminate the common-law right to recover for line-of-duty injuries, as well as its summary rejection of the "separate and apart" exception, is inconsistent with a trend in other jurisdictions towards limiting application of the rule by creating exceptions for independent acts of negligence or willful and wanton conduct (see, e.g., Garcia v City of S. Tucson, 131 Ariz 315, 640 P2d 1117, 1120; Rose v City of Los Angeles, 159 Cal App 3d 883, 206 Cal Rptr 49; Winn v Frasher, 116 Idaho 500, 777 P2d 722; Pottebaum v Hinds, 347 NW2d 642 [Iowa]; Griffith v Southland Corp., 94 Md App 242, 617 A2d 598; Wagener v Burmeister, 858 SW2d 865 [Mo]; Gould v George Brox, Inc., 137 NH 85, 623 A2d 1325; Mahoney v Carus Chem. Co., 102 NJ 564, 510 A2d 4).
Ultimately, the majority here has effectively revived the "fellow-servant" rule abolished in Buckley (supra) by denying police officers and firefighters, as a class, the right to maintain a common-law action against the municipal employer for line-of-duty injuries caused by a co-worker. Contrary to the majority's suggestion that I am urging a "`fellow-servant exception'" to the "firefighter rule" (see, majority opn, at 591), my position is that the "firefighter rule" has always been an exception to the general rule of liability established in Buckley, and should continue to be an exception, not the general rule. Unfortunately, the majority's holding removes from those agencies entrusted with the crimefighting and firefighting functions the incentive to carefully select and train public servants carrying out those tasks, and may destroy the trust between fellow firefighters and police officers *599 that is so critical. Accordingly, because no compelling policy or case-law justification exists for penalizing police officers and firefighters for the carelessness of their fellow servants by extending the "firefighter rule" to co-worker negligence cases, I would reverse the Appellate Division order dismissing the complaint and reinstate plaintiff's verdict.
Order affirmed, with costs.
NOTES
[*] The bar to plaintiff's claim in Buckley v City of New York (176 AD2d 207, lv denied 79 N.Y.2d 757), also cited by the majority (see, majority opn, at 589) was ultimately based not on the firefighter rule, but on the fact that the alleged act of negligence involved the exercise of poor judgment by a superior, which is not actionable under Kenavan v City of New York (supra).