■ JERRY DUCCILLI, Respondent, v BELKO STEEL CORPORATION et al., Appellants.—Order, Supreme Court, Bronx County (Alan Saks, J.), entered on or about November 10, 1988, which granted plaintiff's motion to set aside a jury's verdict in favor of defendants on the issue of negligence and directed a new

trial limited to the issues of negligence, proximate cause, culpable conduct and damages, reversed, on the law, the motion denied, and the complaint dismissed, without costs.

Plaintiff, a police officer, was allegedly injured when he attempted to remove wire which had fallen from defendants' truck and was blocking traffic. The wire had been placed on the truck and allegedly secured by the defendant. It fell off while being delivered to another location and caused traffic to be blocked. Even though the driver of defendant's truck called his office to help in clearing the roadway, the police officer, noting the blocking of traffic, attempted to move the wire. In doing so, he allegedly injured his back.

After a trial, the jury was asked to answer several questions.

The first three questions concerned whether the plaintiff had met the threshold for an action on pain and suffering. The questions, paraphrased, were as follows: (1) Whether the plaintiff had suffered a permanent consequential limitation to the use of a body organ or member? The answer was no. (2) Whether the plaintiff had sustained a significant limitation to the use of a body function or system. The answer was yes. (3) Whether the injury or impairment had prevented plaintiff from performing substantially all of his material activities for no less than 90 days following the accident. The answer was no.

The fourth question asked whether the defendants were negligent and the fifth asked whether if the defendants were negligent, the negligence was a proximate cause of the accident. The answer to the fourth question was no and thus the jury did not reach the fifth question.

The trial court set aside the jury's verdict of no on the fourth question and ordered a new trial directed to that issue and related issues.

A jury's verdict should be set aside only if it could not have reached its verdict on any fair interpretation of the evidence. *(Nicastro v Park,* 113 AD2d 129 [1985]; *Delgado v Board of Educ.,* 65 AD2d 547 [1978], *affd* 48 NY2d 643 [1979].)* Here, in light of the testimony, the jury could have concluded that the wire had been properly secured.

Moreover, since the plaintiff was acting in the course of his employment, public policy precludes his recovery both from his own employer and from a private defendant. *(Santangelo v State of New York,* 71 NY2d 393 [1988]; *Pascarella v City of New York,* 146 AD2d 61 [1st Dept 1989]; *Wynne v Tullman,*

151 AD2d 476; *O'Connor v O'Grady,* 143 AD2d 738 [2d Dept 1988].) Plaintiff's efforts to remove wire from the street were in furtherance of his duties to see that traffic flowed freely. Concur—Carro, J. P., Wallach and Smith, JJ.

Rosenberger and Ellerin, JJ., concur in a memorandum by Ellerin, J., as follows: While I concur in the reversal of the trial court's order setting aside the verdict, I do so only on the ground that there was sufficient evidence in the record to support the jury's finding in favor of the defendant on the issue of liability. I do not, however, agree with the majority that under the circumstances of this case plaintiff, in the first instance, was precluded from asserting a cause of action against defendant because he was a police officer.

The facts giving rise to the instant action are as follows. On March 25, 1985, a flatbed truck, owned by defendant Belko Steel Corporation and operated by the individually named defendant, Hardison, was transporting for delivery a cargo that included nine spools of wire weighing about 1,500 pounds each. There was evidence that proper loading required that each spool be fastened to the flatbed by a chain, that on the day in question only one spool was so secured, and that the failure to properly secure the cargo ultimately resulted in one of the spools rolling off of the flatbed and onto the roadway while the truck was proceeding on Kent Avenue in Brooklyn. When the 1,500-pound spool fell onto the street, the wire unravelled causing blockage across the entire 30-to-35-foot width of the roadway. Various vehicles became entangled in the wire and a massive traffic jam ensued.

At that time, the plaintiff, Jerry Duccilli, was a New York City police officer assigned to routine patrol duties, together with a partner, in a radio patrol car. When the patrol car was brought to a halt by the traffic jam on Kent Avenue, plaintiff exited the vehicle to ascertain the reason for the tie-up and found the blockage caused by the tangled wire. While advising the truck driver that it was the defendant company's responsibility to remove the wire and clear the roadway, once the driver began to do so, the officer, in an effort to expedite that endeavor, assisted the driver in clearing the wire in the course of which he sustained the injuries upon which the instant action is based.

I cannot agree with the majority that public policy requires that the defendants herein be insulated from potential liability by the happenstance that the person who volunteered to assist in alleviating the condition caused by defendant's al-

leged negligence was a police officer who, as the other motorists on the scene, was caught in the traffic entanglement caused by the unravelling wire spool.

In *Santangelo v State of New York* (71 NY2d 393, 397), the Court of Appeals in discussing the policy considerations applicable to actions brought by injured police officers, stated that "Like firefighters, police are the experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence, and like firefighters they generally cannot recover damages for negligence in the very situations that create the occasion for their services".

In *Santangelo (supra,* at 397), the officers were injured while attempting to subdue an escaped mental patient, which the court found was "a function particularly within the scope of duty of police officers *(see, e.g.,* Mental Hygiene Law § 29.19)". The court emphasized the anomaly of permitting a recovery against the State under such circumstances because "allowing recovery against the State for injuries incurred while apprehending an escaped mental patient would result in the payment of damages by the public for injuries sustained by the experts it employs to deal with such situations". *(Supra,* at 398.)

Each of the cases cited by the majority similarly deals with injuries sustained by police officers in the course of the very duties for which they were employed. *Pascarella v City of New York* (146 AD2d 61), dismissed by this court on several grounds, involved a police officer assigned to the Headquarters Security Unit who was injured while performing an outdoor perimeter check of police headquarters, as part of his security duties, when a bomb concealed in refuse exploded. *O'Connor v O'Grady* (143 AD2d 738) involved a police officer injured while attempting to apprehend an unlicensed minor who was dangerously operating an unregistered and uninsured dirt bike on a public road, while *Wynne v Tullman* (151 AD2d 476) deals with a police officer responding to a complaint of intoxicated juveniles who was injured in the course of apprehending one such juvenile. The Second Department's dismissal of both cases was because the activity involved in each—i.e., apprehension of the respective defendants—fell squarely "within the scope of the duties for which the [officer] was trained and compensated" (151 AD2d, *supra,* at 477; 143 AD2d, *supra,* at 739).

The instant case, however, is of a completely different

character. Assisting in the removal of entangled steel wire in a roadway is hardly the kind of duty for which police officers are specially trained, nor is it an activity which falls within the usual scope of their duties. Here the plaintiff's conduct in assisting the truck driver to remove the wire was not in his capacity as a police officer *qua* police officer but, rather, was essentially as a motorist whose vehicle had been prevented from proceeding due to the blocked condition of the roadway and who, by volunteering his assistance, was seeking to expedite the removal of the blockage so that his car could proceed on its way. It is difficult to see what public policy considerations would possibly be advanced. in such instance by insulating a private trucking company from liability for the injurious consequences resulting from the negligent loading of its trucks.

Recently, the Second Department, in the case of *Starkey v Trancamp Contr. Corp.* (152 AD2d 358), had occasion to consider the question of whether a police officer could sue a municipal landowner for injuries which he sustained by reason of allegedly negligent conditions existing on the property which contained a partially demolished school building. The officer was present at the demolition site in response to reports that children were playing on the construction equipment at the premises and he was investigating that complaint at the time that he suffered injuries in the course of a fall. In a Per Curiam decision, the court upheld the police officer's right to bring an action for damages against both the landowner and the contractor for alleged negligence with respect to the creation and maintenance of a dangerous condition at the demolition site. In reaching this conclusion the court emphasized that whether the rule enunciated in *Santangelo v State of New York (supra)* has application in a particular case is dependent upon the factual circumstances of the case with the determinative factor being the degree of separation between the negligent act directly causing the injury and the act which occasioned the police officer's services. Particularly illuminating is the court's review and recital of the factual predicates both in the cases in which the *Santangelo* rule was applied as a bar and those where the officer was permitted to maintain an action for injuries suffered while on duty. An analysis of those cases indicates that the officer has been precluded from suing where the injuries occurred while the officer was actively engaged in providing the special police services for which the officer was trained and remunerated. Alternatively, where the cause of the accident is unrelated to

those special police services, as for example, where an on-duty police officer trips and falls over a raised portion of a sidewalk *(see, Burnside v City of New York,* 144 Misc 2d 183), the officer has been permitted to maintain an action against the alleged tort-feasor.

A case that highlights the foregoing distinction is *Guadagno v Baltimore & Ohio R. R. Co.* (155 AD2d 981 [4th Dept]). In that case, on the morning of the day he was injured, a policeman was assigned to supervise evacuation in connection with a train derailment. Later in the day he was present as a liaison with the cleanup crew. During an attempt to stabilize a derailed tank car, the car fell to the ground releasing methyl chloride. Exposure to the chemical caused the police officer injury. The Appellate Division, Fourth Department, held that while the officer was precluded from making any claim for the negligence causing the derailment by reason of the rule in *Santangelo v State of New York (supra),* that rule did not apply with respect to the hazard (i.e., release of methyl chloride) caused by the subsequent dropping of the car, *because that alleged negligence was not the reason plaintiff was on the scene. (Guadagno v Baltimore & Ohio R. R. Co., supra,* at 981.)

As in *Guadagno (supra),* the plaintiff officer in the instant case was not brought to the scene either because the wire spool had unravelled or because he was to provide any special police services incidental to the clearing away of the wire. His presence on the scene was fortuitous and, although he was on duty, the fact that he volunteered to assist the truck driver was not in the context of rendering the special police services for which he was trained. Accordingly, I would hold that the plaintiff's cause of action was not barred by *Santangelo v State of New York (supra)* and that the Trial Judge properly submitted the issues of negligence and proximate cause to the jury. However, once the case was submitted to the jury, there was no basis on this record for disturbing its verdict.