GEORGE P. CLEARY, Respondent, v. R. E. DIETZ COMPANY, Appellant.

**Master and servant — duty of employer to furnish safe appliances for work in which employees are engaged — negligence — when employer has furnished latest and most approved machine of its kind for use of employees the alleged negligence of the employer in furnishing a machine for injured employee not a question for the jury.**

1. An employer is only required to furnish such appliances in the conduct of his business as are reasonably safe, and in selecting one of several appliances devised for doing a particular work, and in determining which is the safer, he may rely upon the judgment of others engaged in the same business, and if the appliance selected by him is in general use and has been generally adopted, he is not liable to an employee who may be injured because of the use of the appliance so selected, notwithstanding it may appear that another kind or pattern of such appliance, also in use, was safer and less liable to injure an employee operating or in charge of the same.

2. Plaintiff seeks to recover for injuries sustained by him while operating a machine in defendant's factory on the ground that the defendant was guilty of negligence because of its failure to use ordinary care to furnish a reasonably safe machine having regard to the nature of the work. The trial court refused to submit this question to the jury. It appears by the testimony that the machine was an improved, practical, up-to-date machine of its kind and there was no proof offered by plaintiff that it was not the best made or that any other kind was manufactured. Treating the alleged cause of action as one at common law by reason of the apparent insufficiency of his notice of claim under the Employers' Liability Act, it follows from these facts that the

trial court properly refused to submit to the jury the question of defendant's negligence in failing to furnish a proper appliance for the work.

*Cleary* v. *Dietz Co.*, 164 App. Div. 621, reversed.

(Argued November 26, 1917; decided December 11, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judical department, entered December 3, 1914, reversing a judgment in favor of defendant entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Leroy B. Williams* for appellant. The defendant was not negligent because it purchased and used a press constructed in the manner in which this press was built. (*Harley* v. *B. C. Mfg. Co.*, 142 N. Y. 31; *Toye* v. *United Dressed Beef Co.*, 141 App. Div. 332; *McGrath* v. *Fibre Conduit Co.*, 122 App. Div. 424; *Healy* v. *B., etc., R. Co.*, 111 App. Div. 618; *Rath* v. *Transit Development Co.*, 150 App. Div. 750.) The notice of claim is insufficient under the Employers' Liability Act to sustain the plaintiff's case on the second trial as to the defective construction of the press. (*Finnigan* v. *N. Y. Cont. Co.*, 194 N. Y. 244; *Bertolami* v. *United E. & C. Co.*, 198 N. Y. 71; *Logerto* v. *C. B. Co.*, 198 N. Y. 390; *Young* v. *Bradley*, 129 App. Div. 678; *Hughes* v. *Russel*, 104 App. Div. 144; *Ortolans* v. *Degnon Cont. Co.*, 120 App. Div. 59.)

*Stewart F. Hancock* for respondent. The trial court committed reversible error in refusing to submit to the jury the question whether the defendant violated its common-law duty to furnish the plaintiff with a reasonably safe and proper machine. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Staskowski* v. *Standard Oil Co.*,

127 App. Div. 17; *Pelow* v. *Oil Well Supply Co.*, 194 N. Y. 64; *McMullen* v. *New York*, 110 App. Div. 117; *Benzing* v. *Steinway*, 101 N. Y. 547; *Byrne* v. *Eastman Co.*, 163 N. Y. 461; *Rosin* v. *Lidgerwood*, 89 App. Div. 245; *Gmaehle* v. *Rosenberg*, 178 N. Y. 147; *Van Sickle* v. *Ilsley*, 75 Hun, 537; 149 N. Y. 569; *Fox* v. *Le Comte*, 37 N. Y. Supp. 316; 153 N. Y. 680; *Kaplan* v. *Nat. Biscuit Co.*, 38 N. Y. Supp. 1049; *Wemette* v. *American Carbide Co.*, 150 App. Div. 889.) The notice of claim was sufficient to have warranted the submission to the jury under the Employers' Liability Act of the question whether the punch press was a reasonably safe and proper machine and the trial court, therefore, committed reversible error in refusing to submit this question to the jury under the Employers' Liability Act. '(*Hurley* v. *Olcott*, 134 App. Div. 631; 198 N. Y. 132; *Bertolami* v. *U. E. & C. Co.*, 198 N. Y. 71; *Martin & Walker* v. *Williams Mfg. Co.*, 198 N. Y. 324; *Tamaseric* v. *Beckwith*, 145 App. Div. 78; *Smith* v. *Milliken Bros.*, 200 N. Y. 21; *Matrusciello* v. *Milliken Bros.*, 129 App. Div. 661; *Foster* v. *Crooker Co.*, 142 App. Div. 268; *Valentino* v. *Garvin Machine Co.*, 139 App. Div. 139; *Impellizzieri* v. *Cranford*, 141 App. Div. 755; *McGlynn* v. *Pennsylvania Steel Co.*, 144 App. Div. 343.)

CRANE, J. The plaintiff had his fingers cut off while working upon a punch press in the defendant's factory. The machine was a Bliss inclinable punch press No. 21, and was being used to stamp hollow tin tubes about three-quarters of an inch in diameter, parts of lanterns which were being manufactured. The upper die was brought down upon the bedplate by pressing the foot upon a pedal under the press. Unless this pedal was pushed down by the foot, the upper die would not come down.

The plaintiff was hurt on the 6th day of December, 1909, and brought an action against the defendant claim-

ing that the upper die fell because of a defective spring and without his foot being upon the pedal. His notice of claim under the Employers' Liability Act (Cons. Laws, ch. 31, art. 14), dated January 15th, 1910, states: "The upper die suddenly fell when the operator's foot was not upon the pedal, due to the worn and weakened condition of the spring, and due to the weakened condition of the dog which controlled the operation of the upper die of said machine." The action thus brought was tried in May, 1910, and voluntarily discontinued.

This, a second, action was commenced in the following August, the complaint alleging negligence in that the machine was so adjusted that there was not sufficient room between the pedal and the under side of the machine so that the plaintiff could take his foot off the pedal without tripping it and thereby causing it to be set in motion; and, further, that the defendant was negligent in failing to furnish plaintiff with a stick to do the work instead of requiring him to use his hands.

Thus, the plaintiff in his first action claimed that the die dropped without his foot touching .the pedal, and in his second action claimed that it dropped because his foot struck the pedal. Notice under the Employers' Liability Act remained the same for both actions.

Upon the trial of this present action the plaintiff admitted on cross-examination that in his testimony upon the first trial he repeatedly stated that at the time the die fell he had not put his foot upon the pedal, and explained this testimony by saying that he meant that he had not *voluntarily* put his foot upon the pedal. The trial court submitted to the jury the questions of whether or not the defendant was negligent in failing to furnish the plaintiff with a stick to do his work and in instructing him to use his hands; whether the notice under the Employers' Liability Act intentionally misled the defendant, and whether the plaintiff was guilty of contributory

negligence and had assumed the risk of the condition of the machine.

The court refused to submit to the jury the question " whether or not the defendant was guilty of negligence because of its failure to use ordinary care to furnish a reasonably safe machine, having regard to the nature of the work, because of the shortness of the distance between the trip and the bedplate."

The jury rendered a verdict for the defendant. The Appellate Division thought it was error not to have submitted the above question to the jury and has reversed the judgment for the defendant upon this ground.

We agree with the trial court that there was no evidence of negligence arising out of the construction of the punch press.

While the plaintiff makes no claim that the punch press was out of repair or in bad condition from user, he does insist that it was improperly constructed or was so adjusted as to make it dangerous for operatives. A word as to this. The upper die, as already stated, was stamping out tin tubes. Pressure upon the pedal caused the die to fall. The pedal was about seventeen inches below the bedplate of the machine and about six inches from the floor. The foot pressed it down about an inch and a half. The pedal extended out beneath the bedplate a little further than the front of the machine where the operator sat, or else about even with it. The distance between the plaintiff's knee and his foot is given as about twenty-one inches. As he sat at the machine with his foot upon the pedal, his knee would be four inches higher than the bottom of the bedplate of the press. He claims that he tried to get his leg under the press in some sort of fashion, and that as he pressed the pedal down the inch and one-half his knee came back and struck the bedplate forcing his foot back upon the pedal causing the punch to fall.

The distance from the edge of the bedplate to the center of the die was between ten and twelve inches. The plaintiff, therefore, did not have to lean over very far, if at all, to reach his work. After the punch had fallen the first time and returned to its place, it was necessary for the plaintiff, by the use of his fingers, to turn down the edge of the tin being stamped projecting up underneath the die or punch. It was while doing this that the plaintiff got hurt. But the upper die or punch would not come down unless the foot pressed the pedal, and all operators, including the plaintiff, took their foot off the pedal after the die had fallen the first time. If the plaintiff had taken his foot off the pedal, and kept it off, the die would not have come down and he would not have been hurt. He put his fingers under the die before he had fully gotten his foot safely off the pedal. No matter what the distance between the pedal and the bedplate was, or how inconvenient it might have been for the plaintiff to work the pedal when his knee projected four inches above the bedplate, the fact remains that he could have taken his foot off the pedal and kept it off before he put his hands under the die to adjust the tin. There is nothing to show that this work had to be done in haste, or that the plaintiff was pressed for time. The evidence conclusively shows that the instructions were to take the foot off the pedal after the die had once fallen. Striking his knee against the bedplate may have caused the die to fall, but putting his hands underneath the die before he had taken his foot off the pedal was the real cause of the injury.

Passing this question of contributory negligence, however, we come to the point as to whether there was any negligence in furnishing a machine without sufficient space for the plaintiff to place his knee beneath the bedplate.

This punch press had been in the defendant's factory

for about three weeks. It was a new machine, purchased from the E. W. Bliss Company, one of the largest and best-known manufacturers in the business. It was a standard machine. Similar presses made by other manufacturers were like this No. 21 Bliss press with reference to the height of the bedplate from the floor. The distance between the pedal and the bedplate was of the usual and ordinary height in common use for this kind of work. As stated by a representative from the Bliss Company, " This Bliss No. 21 press, as equipped in December, 1909, was an improved, practical, up-to-date machine of its kind, as compared with others used for similar purposes in manufacturing establishments in this state." There was absolutely no proof offered by the plaintiff, or even suggested, that this press was not the best made. No attempt was made to prove that any other kind was manufactured.

The defendant, having purchased the best punch press upon the market, is charged with negligence because the operator could not get his knee between the bedplate and the pedal, and use it freely in this position. But it was not necessary to place the knee under the bed-plate to reach the pedal. The pedal extended out to the edge or front part of the bedplate; it pressed down very easily; the toe or front part of the foot could be placed upon the pedal, the knee projecting up above the outside of the bedplate. This was the natural and right way to operate the machine. This is the way it should have been done, and the plaintiff offered no evidence whatever that such method of operation was not possible or convenient. There was evidence that other operators working this punch press placed their knees in cramped fashion underneath the bedplate to work the pedal, and that they complained to the foreman of the condition. It is impossible to understand why it was necessary to do the work in this way. There is no

evidence that it could not be worked as intended by the manufacturers and produce the same output.

Before us there is no question of failure to properly instruct the plaintiff in the use of the machine, the sole question arising upon the reversal by the Appellate Division being the sufficiency of the machine itself as furnished by the manufacturers.

An employer does not owe to his employee the legal duty of furnishing the best-known appliances in the conduct of his business in order to protect such employee against injury. He is only required to furnish such as are reasonably safe, and in selecting one of several appliances devised for doing a particular work, and in determining which is the safer, he may rely upon the judgment of others engaged in the same business, and if the appliance selected by him is in general use and has been generally adopted, he is not liable to an employee who may be injured because of the use of the appliance so selected, notwithstanding it may appear that another kind or pattern of such appliance, also in use, was safer and less liable to injure an employee operating or in charge of the same. (*Healy* v. *Buffalo, R. & P. Ry. Co.,* 111 App. Div. 618; *Harley* v. *Buffalo C. M. Co.,* 142 N. Y. 31; *Toye* v. *United Dressed Beef Co. of N. Y.,* 141 App. Div. 332; *Minsky* v. *Offenberg,* 169 App. Div. 586).

The duty of an employer is discharged if he furnishes a machine reasonably safe and suitable, such as ordinarily used in the business, and which is in good repair. (*Hickey* v. *Taaffe,* 105 N. Y. 26; *Burke* v. *Witherbee,* 98 N. Y. 562.)

But it is said that the punch press was not properly adjusted; that the pedal could have been lowered about four inches. As the distance between the plaintiff's knee and his foot was twenty-one inches and the distance between the pedal and the bottom of the bed-plate seventeen inches, this readjustment would have barely permitted the plaintiff to squeeze his knee in

between the pedal and the bedplate, and would not have prevented the plaintiff striking his knee as he raised it to take his foot from the pedal. It is fair to assume that every man does not measure the same distance between his foot and the knee. Would the defendant be obliged to discard the machine if the operator's knee proved to be twenty-two inches from his foot? Such suggestions show the absurdity of the plaintiff's claim. Neither does the fact that the machine could have been tipped back in doing the work prove any negligence, for this was done only when necessary to permit waste material to fall off.

The defendant, having furnished the best press upon the market, which could be operated without placing the knee under the bedplate, is not liable to the plaintiff who got hurt while working with his leg under the machine. Again we say there is no question here of improper instruction or failure to give instruction, the only question being " whether the defendant was negligent in failing to furnish a reasonably safe machine because of the shortness of the distance between the pedal and the bedplate."

We have treated the plaintiff's alleged cause of action as one at common law as the apparent insufficiency of his notice of claim bars any action under the Employers' Liability Act.

The judgment of the Appellate Division should be reversed, and the judgment of the Trial Term affirmed, with costs to the appellant in this court and the Appellate Division.

CUDDEBACK, MCLAUGHLIN and ANDREWS, JJ., concur; CARDOZO and POUND, JJ., dissent; HISCOCK, Ch. J., not voting.

Judgment accordingly.