MARY MACCLAVE, as Administratrix of the Estate of RICHARD MACCLAVE, Deceased, Respondent, v. CITY OF NEW YORK, Appellant, et al., Defendant.

First Department, December 16, 1965.

*Alfred Weinstein* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for appellant.

*Alfred S. Julien* of counsel (*Thomas J. Mackell* and *Carl Sarett* with him on the brief; *Sharf, Mackell & Hellenbrand,* attorneys), for respondent.

RABIN, J. P. A mask that was not only ineffective but dangerous to use for general fire-fighting purposes, should not have been issued by the city for such use. It is because the city did issue such a mask, with its tragic consequence, that we affirm this judgment. The evidence overwhelmingly establishes that the mask did not and could not afford the protection for which it was issued and thus was unsafe for general fire-fighting purposes. The city, knowing full well of its limitations should not have issued it or permitted its use.

Plaintiff's intestate, a Lieutenant in the Fire Department of the City of New York, died of carbon monoxide asphyxiation while fighting a fire. His death, it is alleged, was due to the nonfunctioning of a mask issued by the city for general fire-fighting purposes. The mask used by the decedent was known as a Burrell Mine Safety Appliance (MSA) type. It was originally issued in 1938 for use by rescue companies, primarily for gas leaks and refrigerator leaks. However, in August of 1957, some three months before the instant accident, the Fire Department put it into use for general fire-fighting purposes. The decedent Lieutenant and another fireman — both using an MSA mask — were found overcome in a smoke-filled apartment. Although the fireman was revived, the Lieutenant, plaintiff's intestate, died. He was found to have 65% saturation of carbon monoxide in his blood, 30% being sufficient to cause death.

The city admits that the mask was issued for use in fighting fires and concedes that " [i]t could be inferred that he [the decedent] was wearing a filter type mask which did not offer protection."

It would seem that the city was negligent in permitting its firemen to use a mask that did not offer protection and yet it asserts that it may not be held liable. What then is the defense of the city in this action to recover for the wrongful death of the decedent? It rests its defense on the statement that the death of the decedent was caused in one of two ways: " either that the mask had no useable life   *   *   *   or it was used under conditions for which it was not intended." We need not dwell upon the former because the city admits it might be charged with responsibility in such event. However, it asserts that there can be no liability on its part if the death resulted by reason of the latter circumstance. Since the jury rendered a general verdict, the city argues that the verdict may not stand inasmuch as liability may have rested on the latter ground.

This argument of the city may not be sustained because we conclude that the city could be held accountable in either event.

We must agree with the general proposition advanced by the defendant that when an appliance, furnished by an employer, is used for a task for which it is not intended, the employer is ordinarily not liable for injury resulting from such use. And, so, if this mask were used for purposes other than fire-fighting, for example, for skin-diving, that principle would apply. But, concededly, it was issued by the city for general fire-fighting purposes and it was intended by the city that firemen use it for that purpose, and it was in such use that it failed.

However, the city argues that the mask was ineffective for use in situations where the atmosphere contained more than 2% of carbon monoxide, and that it was not intended for use in such circumstances. But, when the city issues the mask for general fire-fighting use, as it did, it may not be held free from liability unless it shows that firemen were adequately informed of that limitation, and unless it provided the firemen with some means of ascertaining the carbon monoxide content of the atmosphere. As to the latter, there is no dispute but that no such means were provided and, as to the former, the evidence is ample to permit a finding that no adequate warning was given to the firemen of the masks' limitations. While there was testimony that some instructions had been given in the use of the mask, there was no evidence whatsoever to indicate that these instructions were directed to the limitations of the mask, and certainly nothing to advise firemen on how they could test for the carbon monoxide content in the atmosphere. In any event, the jury could have so found.

The defendant seeks to overcome such failure to give adequate instructions by pointing out that attached to the mask itself were printed instructions with respect to its use. There is nothing in the testimony to indicate that these writings were called to the attention of the firemen. It is hardly to be expected that a fireman would stop to study the printed instructions attached to the mask when, as here, this fire Lieutenant seized the mask brought to the scene by a fireman of another fire company and used it in the emergency with which he was then presented.

Be that as it may, in the light of its limitations, the mask should not have been issued at all unless some means was provided to enable the firemen to determine the carbon monoxide content of the atmosphere. For without such means the mask could never have been used safely. However, despite such patent conclusion the city furnished the masks to the firemen, made them available for use at fires, and, in effect encouraged

their use. By so doing it was guilty of negligent conduct and it cannot escape liability by merely pointing to the mask's limitations.

Most significant on this aspect of the case, and touching on the question of the city's liability, is the testimony of James Ferguson, a member of the Fire Department of the City of New York for many years, and who was in charge of mask maintenance for the Fire Department in 1957 — the year in which the accident occurred. He was called to give expert testimony for the city. Referring to the mask in question as an '' all-service mask '' or an '' all-purpose mask '' he testified as follows:

'' Q. Mr. Ferguson, you didn't recommend this gas mask, did you, for all service fire fighting, did you? A. No, I did not.

'' Q. You wouldn't have recommended it, would you, Mr. Ferguson, for all fire fighting, would you? A. I would not.''

This testimony, coming from the city's expert, would seem to make the liability of the city conclusive.

However, the city also claims that the verdict may not stand because of errors in the admission of evidence, and because of the inadequacy of the court's charge. It first argues that '' [t]he court improperly admitted evidence of subsequent precautions against similar accidents ''. In support of that charge it points to the admission into evidence of plaintiff's Exhibit 4 entitled '' Report of Injury To Member ''. Specifically, the objection is addressed to that portion of the report which, under the heading '' Corrective Action '' contains the following question and response:

'' What are you doing to prevent similar injuries?

'' Instructions at daily drill in the use of masks, and stressing their limitations.''

The defendant argues that such question and answer relate to precautions taken by it subsequent to the fire thereby rendering them inadmissible. However, that question and answer need not necessarily relate to '' subsequent precautions '' nor need it be deemed to deal with — as put by the city — '' something that happened after the fire ''. It seems to refer to precautions then, or theretofore in use, rather than dealing with '' something that happened after the fire.'' And, indeed, the fact that the report was made on the very day of the fire so indicates, as do the following questions and answers listed under the heading claimed to be objectionable:

'' 2. Was the injured member using a mask? Yes.

'' 3. Had the member been instructed in use of mask? Yes.

'' 4. When was member last instructed? 11-25-57 [the day before the fire] by Div. Safety & Research Off.''

It is apparent from these questions and answers that the city's conclusion that the report was evidence of "subsequent precautions" taken by the city "after the fire"·may not be sustained and its objection is untenable.

It should be noted further, with respect to this claim of error, that the court did not, as it might very well have done, receive the entire exhibit (plaintiff's Exhibit 4) in evidence without qualification. The record indicates that the following transpired: "The Court: The exhibit will be received in evidence. The jury will be properly instructed with regard to any matters which are not relevant to the issues in this case."

However, the defendant made no request that the jury be instructed to exclude any portion of that exhibit from its consideration, nor did it make any request for a charge of any kind with respect thereto. In any event, as aforesaid, we find no error committed in admitting the document.

The city also asserts as constituting reversible error the fact that on cross-examination the trial court permitted the plaintiff's counsel to elicit from the city's safety expert that he had heard that other fire departments had found this type of mask to be unsatisfactory. We find no need for a new trial as a result of the admission of that testimony. While such testimony was perhaps inadmissible to establish that the mask used by the decedent did not afford adequate protection, the defendant suffered no prejudice on that ground because that fact is conceded. The testimony could properly have been admitted to establish the duty of the city, in the light of those reports and in the exercise of reasonable care, to reappraise the desirability of the continued use of this mask and to determine whether additional precautionary measures should be taken if it were to continue its use. The defendant could have had ample protection if it had requested the court to instruct the jury with respect to how this testimony was to be considered, but it failed to do so. Moreover, no proper objection was taken to the admission of this testimony of which the defendant now complains.

Nor may the defendant obtain a reversal of this verdict because the plaintiff elicited from the defendant's expert the fact that the first written instructions on the use of the MSA Mask were issued three months after the fire. It might possibly have been received to offset an inference that adequate instructions had been given before the fire — an inference that the defendant, no doubt, wished to convey to the jury. However, the admission of such testimony may not now be complained of because, although it was developed through a series of questions and answers, no objection was taken to that line of testimony

until it had virtually been completed. When at the very end of that line of testimony, the court in a limited way did sustain the only objection made by the defendant, the defendant made no request that the court order the testimony already given be stricken, nor did it ask for an instruction to the jury to disregard it.

Finally, we do not accept the city's argument that the charge was so inadequate as to warrant a new trial. We may not, and in this case should not, order a new trial on that ground. The defendant specifically stated that it had no exceptions to the charge and it made but two requests for further instructions and each of these requests was granted. It is true that an inadequate charge will warrant a reversal even though no exception be taken. However, while the charge could have been more specific, we find it to be sufficient to have enabled the jury to determine the critical issues in the case. In any event, the alleged deficiencies in the charge were of no consequence. Under the uncontroverted facts of this case it might well be said that the city, in furnishing masks which could not be used under any circumstances, was guilty of negligence as a matter of law and that in the circumstances the decedent was free of contributory negligence as a matter of law. Moreover, the negligence of the city — proven through its own admissions and the testimony of its own expert witnesses — was so overwhelmingly established that this case is hardly one that calls for a reversal in the " interest of justice " as requested by the defendant. To the contrary, justice calls for this judgment to be affirmed.

McNally, Stevens, Eager and Witmer, JJ., concur.

Judgment unanimously affirmed, with $50 costs to respondent.