OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
Plaintiff’s wrongful death claim against New York City arose out of an incident in which an Emergency Services Unit (ESU) police officer was shot and killed when an apparently emotionally disturbed individual who had barricaded himself inside a house emerged and fired a shotgun directly at him. Plaintiff’s claim was premised on two distinct theories. First, plaintiff alleged that the City was negligent in supplying the decedent with a bullet-proof vest called a "Davis vest” that was not fit for use in situations involving barricaded, armed individuals, because, unlike some newer body armor equipment, the Davis vest left the wearer’s sides exposed. Second, plaintiff contended that a negligently issued order from one of the commanding officers directing the ESU team members not to fire at the barricaded individual even if he discharged his weapon was the proximate cause of the decedent’s death. Although the jury returned a verdict for plaintiff on both theories of liability, the Appellate Division correctly reversed the judgment and dismissed the complaint, since neither theory was legally supportable on this record.
With regard to her claim based on the alleged inadequacy of the bullet-proof vest, plaintiff’s proof established nothing more than that the Davis vest may not have been "state of the art” equipment and that there existed other devices that might have been safer for use in situations such as that in which the decedent was killed. In general, the law only requires employers to furnish equipment that is reasonably safe, in good repair and suitable for its intended use (Cleary v Dietz Co., 222 NY 126, 133). "An employer does not owe [an] employee the legal duty of furnishing the best-known appliances * * * to protect such employee against injury” (id., at 133).
Although plaintiff demonstrated that there were other, more protective equipment on the market, it cannot be denied that the Davis vest, which covers large areas of the upper torso, provides a measure of protection from gunfire and is *811 therefore suitable for use in situations in which hostile gunfire is anticipated (cf., MacClave v City of New York, 24 AD2d 230, affd 19 NY2d 892). Further, as the evidence at trial showed, the more protective devices available on the market afford reduced mobility, a disadvantage that might well lead City officials to choose the Davis vest over the alternatives notwithstanding the latter’s expanded coverage. The relative wisdom of such a choice may not be reviewed in a personal injury action founded on negligence, at least where the choice is not an irrational one. As we have previously stated, "when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action” (Haddock v City of New York, 75 NY2d 478, 484; see, Mon v City of New York, 78 NY2d 309, 313; Tango v Tulevech, 61 NY2d 34).
As to plaintiff’s claim based on a commanding officer’s no-shoot order, we conclude that the Appellate Division properly rejected it. In Kenavan v City of New York (70 NY2d 558, 569), we held that liability for injuries occasioned by a colleague’s decision will not be imposed "where the * * * conduct involves the exercise of professional judgment such as electing one among many acceptable methods of carrying out tasks, or making tactical decisions that, in retrospect show poor judgment.” Although plaintiff’s proof established that orders not to shoot even if fired upon are unusual and that ESU officers generally do not need their commanding officer’s express permission to shoot if they are immediately vulnerable to hostile gunfire, those circumstances alone are not sufficient to render the discretionary no-shoot order in this case actionable. Indeed, as the City argues, the presence of an unarmed negotiator at the scene provided a rational ground for the alleged directive. Thus, even if the jury accepted the testimony that the disputed "no-shoot” order had been issued and that it was the proximate cause of the decedent’s death, the City could not be held liable in tort as a result of that order.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs, in a memorandum.