[636 NYS2d 173]

MARK SHEPARD et al., Appellants-Respondents, v MORNING PRIDE MANUFACTURING, INC., et al., Respondents-Appellants, et al., Defendants, and WESTERN FIRE EQUIPMENT COMPANY, Defendant and Third-Party Plaintiff-Respondent. SAFEGUARD AMERICA, Third-Party Defendant-Respondent.

Third Department, January 11, 1996

APPEARANCES OF COUNSEL

*Walter D. Kogut, P. C.,* Syracuse, for appellants-respondents.

*Melvin & Melvin,* Syracuse *(Ronald S. Carr* of counsel), for Morning Pride Manufacturing, Inc., respondent-appellant.

*Smith, Sovik, Kendrick & Sugnet, P. C.,* Syracuse *(Steven W. Williams* of counsel), for Cairns & Brothers, Inc., respondent-appellant.

*Hiscock & Barclay,* Syracuse *(Taylor H. Obold* of counsel), for Mine Safety Appliances Company, respondent-appellant.

*Sugarman, Wallace, Manheim & Schoenwald,* Syracuse *(Sherry R. Bruce* of counsel), for defendant and third-party plaintiff-respondent.

*Smyk, Smyk & Fahrenz,* Binghamton *(Stephen D. Smyk* of counsel), for third-party defendant-respondent.

## OPINION OF THE COURT

MERCURE, J.

On this appeal, we are confronted with the question of whether the "firefighter's rule" may properly bar a volunteer firefighter's action against a manufacturer of firefighter's safety equipment that failed to provide adequate protection against hazards foreseeably encountered by firefighters during rescue activities. For the reasons that follow, we answer the question in the negative and reverse so much of the orders appealed from as dismissed plaintiffs' causes of action against defendants Morning Pride Manufacturing, Inc., Mine Safety Appliances Company, Cairns and Brothers, Inc. and Western Fire Equipment Company (hereinafter collectively referred to as defendants).

Plaintiff Mark Shepard (hereinafter plaintiff), at the time a member of the Village of Morrisville Volunteer Fire Depart-

ment, sustained serious disfiguring burns in a December 18, 1982 mobile home fire. After arriving at the scene on that evening, plaintiff and two other firefighters entered the burning structure to search for any individuals who might be trapped inside. All three firefighters were wearing department-issued breathing apparatus, fire helmets with plastic face shields, rubber boots, gloves and a "turnout" coat (a type of protective coat designed to be worn by firefighters in conventional, structure-type, firefighting activities). The three crawled into the mobile home in single file, using a fire hose as a life line. Because the lead firefighter was having difficulty finding his way and plaintiff was familiar with the structure, plaintiff volunteered to take the lead. After proceeding a short distance, plaintiff noticed a significant buildup of heat and decided the firefighters should withdraw from the structure as quickly as possible. While backing out of the building, plaintiff somehow lost contact with the fire hose and became disoriented. Suddenly, the room burst into flames in a phenomenon known as a "flashover", where extreme temperatures are reached for a fraction of a second. Plaintiff's spontaneous reaction was to stand up, whereupon he became immediately engulfed in flames. Fortunately, the other firefighters quickly discovered plaintiff's absence and were able to locate him and pull him from the structure before the flames took his life.

Plaintiffs brought this action against, *inter alia*, Morning Pride, the manufacturer of the turnout coat, Mine Safety Appliances, the manufacturer of the breathing apparatus, Cairns and Brothers, the manufacturer of the fire helmet and face shield, and Western Fire Equipment, the manufacturer of the fire gloves, alleging causes of action sounding in negligence, breach of warranty and products liability. All of the causes of action against defendants were based upon the essential allegations that the respective items of safety equipment were not adequate to protect plaintiff against hazards foreseeably encountered by firefighters during rescue activities, that by burning or melting the subject devices actually enhanced plaintiff's injuries and that no warning was given of said devices' inadequacy or of the potential for injury caused by them. Ultimately, Supreme Court granted summary judgment in favor of defendants dismissing the entire complaint against each of them on the basis of the so-called "firefighter's rule". Plaintiff appeals, and Morning Pride cross-appeals from so much of Supreme Court's order entered July 27, 1994 as failed to grant its motion for summary judgment on the merits.

The firefighter's rule, originally conceived to bar actions by professional firefighters against owners, lessees or occupants of buildings whose negligence caused the fire in the first instance, is founded upon the principle that "[firefighters] are bound to anticipate that many fires do start from carelessness on the part of someone; and, absent special statutory provision, liability may not be predicated on a theory that the building owner, lessee or occupant owes a duty to paid [firefighters] to exercise care to eliminate a need for the special services for which they are trained and paid" (*McGee v Adams Paper & Twine Co.*, 26 AD2d 186, 190, *affd on opn below* 20 NY2d 921; *see, Santangelo v State of New York*, 71 NY2d 393, 396; *Kenavan v City of New York*, 70 NY2d 558, 566). In time, volunteer firefighters were encompassed within the affected class of plaintiffs (*see, Zanghi v Niagara Frontier Transp. Commn.*, 85 NY2d 423, 437; *June v Laris*, 205 AD2d 166, 169, *lv dismissed and denied* 85 NY2d 955) and the class of protected defendants was expanded to include any entity whose negligence either created the occasion for the firefighter's services (*see, Austin v City of Buffalo*, 179 AD2d 1075, 1076, *amended* 182 AD2d 1143, *lv dismissed and denied* 79 NY2d 1033; *Furch v General Elec. Co.*, 142 AD2d 8, 11-12, *lv dismissed* 74 NY2d 792) or caused a condition to exist on the premises that subjected the firefighter to an enhanced risk in performing that service (*see, Zanghi v Niagara Frontier Transp. Commn.*, *supra*, at 439-444 [contractor's negligent construction of building alleged to have caused abnormal collapse during fire]). The underlying rationale, "the public policy against awarding damages to firefighters * * * for hazards 'that create a need for their services' and which they are hired, specially trained and compensated to confront" (*Zanghi v Niagara Frontier Transp. Commn.*, *supra*, at 439, quoting *Santangelo v State of New York*, *supra*, at 397), remained the same. Finally, the rule has been employed to bar suits against fellow firefighters or the State or municipal government providing the firefighting service either upon the theory of governmental immunity (*see, Kenavan v City of New York*, *supra*, at 569) or based upon the anomaly of permitting suit against the very entity providing an enhanced salary and benefits to firefighters because of the hazardous nature of their work (*see, Santangelo v State of New York*, *supra*, at 398).

In our view, the disqualifying effect of the firefighter's rule may be properly extended no further than those categories of cases (and classes of protected parties) satisfying its underlying purposes. To absolve the manufacturer of defective safety equipment from liability simply because the end user happens

to be a firefighter serves none of the policy reasons behind the rule and, in fact, would have the effect of providing unscrupulous businesses with a permanent "open season" on firefighters. Significantly, the Court of Appeals has had occasion to consider two actions arising out of the alleged failure of protective equipment, involving a firefighter's gas mask (*MacClave v City of New York*, 19 NY2d 892) and a police officer's bulletproof vest (*McCormack v City of New York*, 80 NY2d 808), and in neither case invoked the firefighter's rule. In *McCormack v City of New York* (*supra,* at 811), recovery was denied on the basis of sovereign immunity in " 'the exercise of discretion or expert judgment in policy matters' " (quoting *Haddock v City of New York*, 75 NY2d 478, 484), a defense that clearly would not have extended to a manufacturer. In *MacClave v City of New York* (*supra,* at 894), the Court of Appeals affirmed a verdict in favor of the firefighter. Finally, the Fourth Department confronted the same issue in *Martell v City of Utica* (184 AD2d 1009) and, although dismissing claims alleging negligence in the methods and procedures used to fight the fire on the basis of the firefighter's rule, affirmed the denial of summary judgment on the claim for injuries resulting from defective protective equipment (*supra,* at 1010).

Based upon the foregoing, we conclude that the firefighter's rule had no application in this case and that Supreme Court erred in dismissing the complaint against defendants on that basis. Because resolution of the various motions on the basis of the exclusionary effect of the firefighter's rule may have prevented a full development of the record on the question of whether one or more of the moving defendants were entitled to summary judgment on the merits, we shall remit the matter to Supreme Court for further proceedings in that regard.

MIKOLL, J. P., CASEY, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the order entered July 27, 1994 is modified, on the law, without costs, by reversing so much thereof as partially granted the motions by defendants Morning Pride Manufacturing, Inc., Cairns and Brothers, Inc. and Mine Safety Appliances Company for summary judgment dismissing the complaint against them; said motions denied; and, as so modified, affirmed.

Ordered that the order entered August 30, 1994 is reversed, on the law, without costs, and motions by defendants Cairns and Brothers, Inc. and Western Fire Equipment Company for summary judgment dismissing the complaint against them denied.

Ordered that the order entered September 26, 1994 is reversed, on the law, without costs, and motion for summary judgment dismissing the remaining causes of action of the complaint against Morning Pride Manufacturing, Inc. and Mine Safety Appliances Company denied.