[638 NYS2d 977]

HERMINIO NEGRON, Individually and as Administrator of the Estate of GUADALUPE NEGRON, Deceased, Appellant, v STATE OF NEW YORK, Respondent.

Third Department, March 7, 1996

*Sullivan & Liapakis,* New York City *(Stephen C. Glasser, Eleni Coffinas* and *Ronald E. Sommer* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Michael S. Buskus* and *Peter H. Schiff* of counsel), for respondent.

### OPINION OF THE COURT

SPAIN, J.

The procedural history and facts in this matter, which culminated in the horrific death of Guadalupe Negron, are not in dispute. Elyas Bonrouhi (also known as David Benjamin) obtained a license to practice medicine in New York in 1982. Within three years of obtaining his license he was the subject of an investigation and a medical misconduct proceeding. In that 1985 proceeding a Hearing Committee convened by the State Board for Professional Medical Conduct (hereinafter the BPMC) determined that Bonrouhi posed an "imminent danger" to the public and recommended that the Commissioner of Health issue a summary suspension order pursuant to Public Health Law § 230 (12) suspending Bonrouhi's right to practice medicine pending the disposition of the charges against him. The Commissioner of Health acted upon the Hearing Committee's recommendation and issued a summary suspension order. The BPMC thereafter recommended that Bonrouhi's license be permanently revoked and that the summary suspension be permanently continued. However, upon Bonrouhi's request for review, the Board of Regents modified the BPMC's sanction by suspending Bonrouhi's license for three years and staying all but three months of the suspension, together with imposing restrictions on his practice during a probationary period.

Thereafter, in 1992, the BPMC commenced a new proceeding based upon new professional misconduct charges against Bonrouhi relating to the treatment of five patients in 1990 and 1991; he was charged with multiple counts of incompetence, negligence, fraud and failure to maintain adequate records. A Hearing Committee was convened and a full hearing was held. By decision and order dated May 11, 1993, the Hearing Com-

mittee concluded that Bonrouhi was "a significant risk to the community and must therefore be removed from practice" and, further, that his "license to practice medicine shall be immediately REVOKED"; a summary suspension order was neither recommended nor issued. Bonrouhi immediately filed a notice of review with the Administrative Review Board for Professional Medical Conduct (hereinafter the ARB); pursuant to Public Health Law § 230-c (4)[1] the sanction imposed by the Hearing Committee was stayed which allowed Bonrouhi to continue his practice of medicine pending the disposition of the review proceeding. On July 30, 1993 the ARB sustained the Hearing Committee's findings and recommendations, thereby revoking Bonrouhi's license to practice medicine in New York.

On July 9, 1993, while the sanction against Bonrouhi was stayed, claimant's decedent, Guadalupe Negron, a 33-year-old mother of four, died in Bonrouhi's medical clinic after he performed an abortion in decedent's 20th week of pregnancy; decedent died from cardiac arrest secondary to uncontrolled bleeding from a perforated uterus. The totality of the circumstances surrounding decedent's death led to his criminal indictment in Queens County where he was charged with intentional murder in the second degree, manslaughter, criminally negligent homicide and tampering with physical evidence. On August 8, 1995, after a highly publicized jury trial, Bonrouhi was convicted of murder in the second degree and shortly thereafter was sentenced to 25 years to life imprisonment. Claimant, decedent's husband, commenced the instant action in October 1993 seeking damages against the State for, *inter alia*, decedent's conscious pain and suffering and wrongful death. Prior to issue being joined the State moved for an order, pursuant to CPLR 3211 (a) (2) and (7), seeking dismissal upon the grounds that the Court of Claims lacked subject matter jurisdiction and that the pleadings failed to state a cause of action. The Court of Claims, in a well-reasoned decision and order, granted defendant's motion and dismissed the claim. Claimant appeals.

Claimant contends that the Hearing Committee's language to "immediately revoke" Bonrouhi's license mandated that the Commissioner of Health summarily suspend Bonrouhi from the practice of medicine pursuant to Public Health Law § 230

1. Public Health Law § 230-c (4) (a) states, in pertinent part: "Any penalty imposed by the order of the committee on professional conduct is stayed by the service of the notice of review upon the administrative review board and remains stayed until the review board renders its determination."

(12) and, further, that the immunity afforded Hearing Committee members pursuant to Public Health Law § 230 (8) is qualified and, under the circumstances of this case, should not be invoked. We disagree. Claimant's contentions that (1) the Commissioner of Health was not only empowered to act but was required to act upon the Hearing Committee's decision and order and (2) the Commissioner's subsequent failure to issue a summary suspension order served as an abdication of statutory responsibility are not supported by statute.[2] The Hearing Committee, in its decision and order dated May 11, 1993, ordered that Bonrouhi's "license to practice medicine shall be immediately REVOKED" but neither made a determination of "imminent danger" nor recommended the issuance of a summary suspension order. Further, had the Hearing Committee recommended or requested such an order, Public Health Law § 230 (12) does not mandate the Commissioner's response but rather states that the Commissioner "*may* order the licensee * * * to discontinue such dangerous condition or activity" (emphasis supplied). The Hearing Committee had the power to initiate the process by which a summary order could have been issued and did not so act.

The clear language of Public Health Law § 230 (8) grants immunity to the Hearing Committee members and a cause of action against the State based on the acts or omissions of the Hearing Committee is precluded by the doctrine of sovereign immunity. The Committee's exercise of discretion was quasi-judicial in nature for which the State is protected by absolute immunity (*see, Arteaga v State of New York*, 72 NY2d 212, 214; *Tango v Tulevech*, 61 NY2d 34; *Weiss v Fote*, 7 NY2d 579). In our view, the Committee's failure to choose one course of action versus another is not actionable (*see, McCormack v City of*

---

2. Public Health Law § 230 (12) states, in pertinent part, as follows: "Summary action. Whenever the commissioner [of health], after an investigation and a recommendation by a committee on professional conduct of the state board for professional medical conduct, based upon a determination that a licensee is causing, engaging in or maintaining a condition or activity which in the commissioner's opinion constitutes an imminent danger to the health of the people, and that it therefore appears to be prejudicial to the interests of the people to delay action until an opportunity for a hearing can be provided in accordance with the prehearing and hearing provisions of this section, the commissioner may order the licensee, by written notice, to discontinue such dangerous condition or activity or take certain action immediately and for a period of ninety days from the date of service of the order."

New York, 80 NY2d 808, 811; *Kenavan v City of New York*, 70 NY2d 558, 569).

CARDONA, P. J., CASEY, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the order is affirmed, without costs.