Dominick I. GOLIO, Plaintiff,

v.

**CITY OF WHITE PLAINS, City of White Plains Police Officers Jennifer Suggs, Badge 151, F/N/U/ Lopez, Badge Unknown, and Doe One Through Five, Being City of White Plains Police Officers Not Yet Identified, Defendants.**

**No. 06 CIV. 1691 CM/GAY.**

United States District Court, S.D. New York.

Nov. 2, 2006.

Joseph Anthony Maria, Joseph A. Maria, P.C., White Plains, NY, for Defendants.

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART THE MOTION OF THE INDIVIDUAL DEFENDANTS (SUGGS AND LOPEZ) TO DISMISS ON GROUNDS OF QUALIFIED IMMUNITY

MCMAHON, District Judge.

As is well known, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). This court has handled literally hundreds of motions by police officers who seek the protection of qualified immunity because they did not knowingly violate the law.

In this case, the officer is alleged to have been plainly incompetent.

The facts, viewed most favorably to plaintiff, are as follows:

Dr. Dominick I. Golio is a a cranio-facial surgeon who specializes in repairing pediatric birth defects.

On the evening of September 30, 2005, he was driving in White Plains. He was stopped by Defendant Police Officer Jennifer Suggs at around 10:30 PM. Officer Suggs demanded plaintiff's license and registration, took them to her car, and checked them on her patrol car's computer. The information she allegedly obtained indicated that the car's registration had expired, and that the doctor's driver's license had expired. Officer Suggs returned to the vehicle and arrested plaintiff for driving with a suspended license and expired registration (Cplt.¶¶ 11–12).

George David Wachtel, Kuby & Perez, LLP, New York City, for Plaintiff.

In fact, plaintiff's license had not been suspended. (Cplt.¶ 12) The complaint alleges that the registration for the vehicle had not expired, but plaintiff's affidavit in opposition to the motion to dismiss does not so assert, and does assert that the summons for driving an unregistered vehicle was not voided when the summons for unlicensed operation was voided. It is not clear to the court whether plaintiff persists in the allegation that the car's registration was valid or not.[1]

Defendant Officer Lopez arrived on the scene and helped Officer Suggs search plaintiff. Officer Suggs then handcuffed plaintiff and placed him in the rear seat of Suggs' patrol car.

Plaintiff advised the officers that the handcuffs were too tight and were causing him pain. They ignored his complaint, and Officer Suggs drove plaintiff to White Plains Police Headquarters. During the ride to the station house, plaintiff's wrist began to redden and swell and he experienced pain and numbness. He again complained and was again ignored.

At the station house, Officer Suggs removed the handcuff from plaintiff's right wrist and used the cuff to lock plaintiff by his left wrist to a bar in the holding area. She did not loosen the left cuff, although the complaint alleges that the swelling and discoloration of the wrist were obvious, and plaintiff's complaints of pain unremitting.

Plaintiff was searched yet again by Officer Lopez after he arrived at the station house. Plaintiff believes that Lopez had to have seen the redness and swelling, but did not loosen the handcuff.

Plaintiff remained cuffed to the bar for approximately two hours (11 PM to 1 AM).

At one point, Officer Suggs moved plaintiff from one location on the bar to another, but did not respond to his complaints or the sight of his discolored and swollen wrist.

At 1 AM, Suggs released Dr. Golio, after giving him two uniform traffic ticket slips, one for having an unregistered vehicle and the other for aggravated unlicensed operation of a motor vehicle. The police took the money that was in Dr. Golio's wallet and retained it as "bail."

His car was impounded. Dr. Golio was given a receipt for the impounded car. It listed the owner as Dominick J (not I) Golio. The Form also indicated that the driver of the car at the time it was impounded was Dominick J (not I) Golio.

Dr. Golio has a father named Dominick J. Golio. They live at the same address. They do not have the same middle name. I assume, since one begat the other, that they do not have the same date of birth.

The next day, Dr. Golio returned to the precinct, spoke to a Lieutenant and asked that his license be checked once more. The Lieutenant did so and immediately realized that an error had been made. He returned plaintiff's money, had a police officer retrieve the car from the impound lot, and voided the ticket for aggravated unlicensed operation (a misdemeanor, and the only crime with which plaintiff had been charged).

Plaintiff alleges that the excessive pressure from the handcuffs damages his wrist and hand nerves. He claims that he has not operated since the incident. He alleges that experts have opined that he may never regain full use of his hand.

---

1. Defendants' moving brief asserts facts that are not in the complaint, namely that Officer Suggs saw that the car had "old Liberty plates," searched the plates and determined that the car's registration had expired.

Plaintiff's complaint alleges false arrest, excessive force, battery and negligence against the officers. He seeks to hold White Plains accountable under Monell for the Section 1983 violations and under a theory of respondeat superior for the common law torts.

The two officers seek dismissal of the federal claims against them on the ground of qualified immunity. They seek dismissal of the state law claims on the ground that defendants cannot be held liable for judgmental errors in the exercise of its governmental functions.

**False Arrest: Officer Suggs**

While Officer Suggs was privileged to stop the car because she observed it driving with an expired registration,[2] an officer is not privileged to arrest anyone for that non-criminal violation. But there is no indication that Officer Suggs did arrest plaintiff for driving with an expired registration. She arrested him for aggravated unlicensed operation of a motor vehicle in the third degree, which is an unclassified misdemeanor.[3]

There is no question that Officer Suggs made a mistake of fact when she arrested Dr. Golio for aggravated unlicensed operation of a motor vehicle. She mistook him for his father, who had the same first name and surname and address but a different middle initial, birthday and driver's license number. Dr. Golio's father's driver's license had in fact expired; but Dr. Golio's had not.

The question is whether she is entitled to qualified immunity for making that mistake.

Maybe yes; maybe no.

■ An officer who makes an arrest lacking probable cause is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed. *See Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997); *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. at 3041. This mistaken but objectively reasonable belief has recently been referred to as arguable probable cause. *See, e.g., Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir.2001); *Coons v. Casabella*, 284 F.3d 437, 2002 WL 483410, at *2 (2d Cir.2002); 1A Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation Claims and Defenses* § 3.21 (3d ed.1997). Thus, an arresting officer is entitled to summary judgment on qualified immunity grounds if, from the view of the record most favorable to the plaintiff, a jury could conclude that arguable probable cause existed. *Cerrone*, 246 F.3d at 202; *see Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ The question is whether officers of reasonable competence could have disagreed about whether arguable probable cause existed to arrest Dr. Golio for having a suspended license. Plaintiff argues that any reasonably competent police officer would have known, from comparing Dr. Golio's driver's license (which Officer

---

**2.** Plaintiff apparently does not deny that he was driving a car with an expired registration

**3.** A sentence for an unclassified misdemeanor must be in accordance with the sentence specified in the law or ordinance that defines the crime. N.Y. Penal Law § 70.15(3) (McKinney 2006). "When a person is convicted of aggravated unlicensed operation of a motor vehicle in the third degree, the sentence of the court must be: (i) a fine of not less than two hundred fifty dollars nor more than five hundred dollars; or (ii) a term of imprisonment of not more than thirty days; or (iii) both such fine and imprisonment." N.Y. Vehicle and Traffic Law § 511(1)(b) (McKinney 2006).

Suggs had in her possession) with the information that came back on the patrol car's computer (which Officer Suggs viewed), that the person whose license she was holding was a different person than the person whose license was suspended. Frankly, that depends on a great deal of information that is not presently in the record, including: what information Officer Suggs input into her RMP computer to check the license and registration; what information came back to her; the differences in the birthdays and driver's license numbers of Dr. Golio and his father; whether Dr. Golio looks like he could have been born on the birthdate shown on his father's driver's license, and other factors as well. The court also notes that criminals have been known to obtain false identification (including drivers' licenses) with minor details in their pedigree information altered (including such things as middle initials and birth dates). It is possible that the differences in this case were of the sort that might lead a reasonable police officer to conclude that there was some probability that the license Dr. Golio presented to Officer Suggs contained erroneous information.[4]

Or it is possible—as plaintiff contends—that Officer Suggs is not a reasonably competent officer. The memorandum prepared by Sgt. Fitzmaurice, who reported the unfortunate incident to Chief Bradley, suggests as much: it states that Officer Suggs "did not investigate all required elements of the arrest before taking Golio into custody." Possibly Sgt. Fitzmaurice knew more about what Officer Suggs did and did not do than the court does; I am sure he has more information about what a reasonably competent officer should have done than I do.

In short, this is the rare case in which the fact record needs to be more fully developed before the court can rule on the question of qualified immunity in the context of the false arrest claim against Officer Suggs. The motion is denied with leave to renew, either at the close of discovery or at trial.

**False Arrest: Officer Lopez**

Both plaintiff's complaint and defendants' moving papers conflate the two individual police officers, although their situations must be considered separately.

■ Officer Lopez is entitled to dismissal of the false arrest charge lodged against him. Viewing the facts most favorably to the plaintiff:

(1) There is no allegation that Officer Lopez arrested plaintiff or that, in assisting Officer Suggs after she arrested plaintiff, he independently violated any constitutional right of plaintiff's. In other words, there is no allegation that he did anything wrong. Therefore, the complaint does not state a viable claim for false arrest against him.

(2) According to the complaint, Officer Lopez arrived on the scene after plaintiff was detained by Officer Suggs. There is no allegation that he checked plaintiff's license and registration or made any error in doing so. He allegedly participated in the search of Dr. Golio, but the only fair inference one can draw from the complaint is that he did so after receiving information from his fellow officer, Officer Suggs. I know of no rule that requires every officer who participates in a search incident to arrest to ascertain independently the validity of the arrest, and I cannot say that no reasonable officer who arrived on

---

**4.** Plaintiff's deposition has not been taken, or at least has not been submitted to the court. I am curious about whether Dr. Golio tried to

explain to Officer Suggs on the night of his arrest that she was mistaking him for his father—and if not, why not.

the scene following an arrest, and who offered assistance to the arresting officer, would have failed to do so in the circumstances pleaded. Therefore, Officer Lopez has, at a minimum, qualified immunity for his participation in the arrest and search of Dr. Golio.

**Excessive Force: Officer Suggs**

■ The Fourth Amendment governs a claim that excessive force was used in connection with an arrest. *See Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether excessive force was employed, the question is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting her, without regard to her underlying intent or motivation. *Id.* at 397, 109 S.Ct. 1865. Where circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant in an action under § 1983 on an excessive use of force claim is not entitled to judgment as a matter of law on a defense of qualified immunity. *Mickle v. Morin*, 297 F.3d 114 (2d Cir.2002).

■ When analyzing a claim of excessive force based upon the use of handcuffs, in addition to evidence of the fact that the handcuffs were too tight and that the plaintiff's requests for them to be loosened went unanswered, the court may consider the degree of injury suffered by the plaintiff. *Esmont v. City of New York*, 371 F. Supp 2d 202, 215 (E.D.N.Y.2005). While tight handcuffing, alone, can give rise to a cause of action under § 1983, *Simpson v. Saroff*, 741 F.Supp. 1073, 1078 (S.D.N.Y. 1990), the plaintiff must suffer some form of injury from the tight handcuffs in order for such a claim to be actionable. *Id.* Though the Plaintiff's injuries need not be severe or permanent, some injury must be asserted. *Esmont*, 371 F. Supp 2d at 215.

■ Here, Officer Suggs allegedly kept plaintiff cuffed so tightly that redness and swelling of his hand and wrist were apparent to the naked eye, but refused to loosen the cuff on plaintiff's left wrist—indeed, kept it tightly cuffed for more than two hours—despite plaintiff's repeated cries of pain. Plaintiff says that the excessive handcuff pressure damage his wrist and hand nerves and, as a result, he may never regain full use of his hand. Plaintiff, a craniofacial surgeon, states that he has been unable to operate with his injured hand.

Any reasonably competent police officer would know that he should not cuff a prisoner so tightly as to cause injury—especially injury that is immediately apparent, because it is visible to the naked eye.

Therefore, Officer Suggs is not entitled to qualified immunity on the excessive force claim.

Of course, the claim may yet be dismissed. Sgt. Fitzmaurice's memorandum suggests that defendants will introduce evidence that Dr. Golio has not suffered any debilitating injury. But resolution of that issue must abide a trial.

**Excessive Force: Officer Lopez**

■ Plaintiff does not allege that Officer Lopez handcuffed him. However, plaintiff does allege that Officer Lopez had occasion to see the redness and swelling caused by the too-tight handcuffs, but refused to loosen them.

■ A police officer can be held liable under 42 U.S.C. § 1983 for not intervening in a situation where excessive force is being used by another officer. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (citations omitted). Liability will attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the

officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Id.*

Viewing the facts pleaded as true, Officer Lopez is not entitled to qualified immunity on plaintiff's failure to intervene claim, because he saw that Dr. Golio was being subjected to a degree of force that was causing injury unnecessary to keeping plaintiff in custody—a clearly settled constitutional violation—but did nothing to alleviate the problem. If it turns out that after discovery that Officer Lopez never saw signs of any constitutional violation, then he will prevail because he did nothing wrong.

**Motion to Dismiss State Law Negligence Claims By Both Defendants And White Plains**

 Defendants move to dismiss the state negligence claims based on the so-called "judgmental error doctrine." They claim that they cannot be held liable for the alleged judgmental errors of Police Officer Suggs in carrying out the discretionary act of arresting plaintiff.

 Under New York Law, judicial, quasi-judicial, legislative and high level executive branch officials enjoy absolute immunity for the exercise of discretion and judgment. *McCormack v. City of New York,* 80 N.Y.2d 808, 587 N.Y.S.2d 580, 600 N.E.2d 211 (1992); *Kenavan v. City of New York,* 70 N.Y.2d 558, 523 N.Y.S.2d 60, 517 N.E.2d 872 (1987). When a government actor who does not fall within the judicial, quasi-judicial, legislative or executive category—such as a police officer—exercises discretion, the immunity granted is qualified or limited—it can be negated by evidence of bad faith or malice on the part of the actor or lack of any reasonable basis for the act. *Broughton v. State,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975) (qualified immunity for police

arrests; arrest is valid unless there is no warrant or other justification); *Rodriguez v. City of New York,* 189 A.D.2d 166, 595 N.Y.S.2d 421 (1st Dep't 1993) (police officer's decision whether to stop and arrest an individual is immune from liability under judgmental error rule).

Plaintiff argues that Police Officer Suggs should be liable because the act of arresting plaintiff was ministerial rather than discretionary and therefore, not subject to the judgment error rule.

It is hard to imagine how a police officer's decision to arrest someone for a misdemeanor traffic offense could be characterized as a ministerial act. Officer Suggs' first discretionary act was to stop plaintiff's vehicle—a decision that would be the first in a series of discretionary acts that would culminate in plaintiff's unfortunate arrest. Officer Suggs next determined that she would perform a computer check on plaintiff and the vehicle he was driving. Presented with computer data she mistakenly read as evidence that plaintiff was operating a motor vehicle without a licence, Suggs had to decide how she was going to handle the situation. Officer Suggs had two reasonable options: (1) issue plaintiff a universal traffic summons, impound the car and send plaintiff on his way, or (2) immediately place defendant under arrest. *See* N.Y. Vehicle and Traffic Law § 70.15(3) (McKinney 2006). The officer chose to arrest defendant, which she was entitled to do based on "her" reading of the computer information. *See People v. Ceballos,* 175 A.D.2d 315, 572 N.Y.S.2d 84 (3d Dep't 1991); *People v. Buckmon,* 293 A.D.2d 623, 742 N.Y.S.2d 69 (2d Dep't 2002). To say Officer Suggs was performing a ministerial task and not exercising discretion when she arrested defendant is ludicrous.

Therefore, Officer Suggs is entitled to immunity on the state negligence claim, unless she can be said to have acted in bad faith or with malice or that she lacked any reasonable basis for arresting plaintiff. There is nothing in the complaint to suggest that Officer Suggs acted in bad faith or with malice toward plaintiff. The question is: Did Officer Suggs' mistaken belief that plaintiff's license was suspended provide a reasonable basis for her to make the arrest? Probably yes; perhaps no. Just how egregious was Suggs' error? Is it an error a reasonably competent police officer could possibly make? Much like Officer Suggs' qualified immunity motion with respect to false arrest, this aspect of defendants' motion must await a more fully developed record before it can be properly resolved.

Accordingly, the motion to dismiss the negligence claim on immunity grounds is denied with leave to renew, either at the close of discovery or at trial.

The parties are to abide by the attached discovery schedule

This constitutes the decision and order of the court.